## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES,** *et al.*,<br><br>      **Plaintiffs,**<br><br>   **v.**<br><br>**DISTRICT OF COLUMBIA,**<br><br>      **Defendant.** | **No. 1:24-cv-02942-ACR** |

## NOTICE REGARDING DEFENDANT'S ANTICIPATED MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR A PRE-MOTION CONFERENCE

Pursuant to this Court's Standing Order [15], Defendant District of Columbia (the District) respectfully submits notice that it anticipates filing a motion for summary judgment and requests a pre-motion conference.

This case is a preemption challenge to a District law aimed at combatting climate change and protecting public health. In short, District law provides that, by the end of 2026, the Mayor must issue regulations providing that, in new construction or substantial improvements of certain buildings, "[o]n-site fuel combustion shall not be permitted for the provision of thermal energy to the building." D.C. Code § 6-1453.01(a)(3)(B)(iii) ("the Law"). Plaintiffs (industry associations, two labor unions, and a gas utility) allege that the Law is expressly preempted by the Energy Policy and Conservation Act (EPCA), 42 U.S.C. §§ 6191–6309. Compl. [1].

EPCA was passed decades ago, not to enact federal climate policy, but to reduce dependency on foreign oil following the 1973 oil crisis. *Nat. Res. Def. Council, Inc. v. Herrington*, 768 F.2d 1355, 1364 (D.C. Cir. 1985). As one of many policies towards that end, EPCA established programs to encourage Americans to use appliances, like refrigerators and

television sets, that conserved energy. *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 499 (9th Cir. 2005). Through amendments, EPCA evolved to establish energy conservation standards for specific appliances and authorize the Department of Energy to amend such standards. *Id.* at 499–500; 42 U.S.C. § 6295(a).[1] An "energy conservation standard" means either a "design requirement" for certain products or "a performance standard which prescribes a minimum level of energy efficiency or a maximum quantity of energy use." 42 U.S.C. § 6291(6).

EPCA also contains a preemption provision. It provides, as relevant here, that once the federal government sets an "energy conservation standard . . . for any covered product, no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product." *Id.* § 6297(c). The key term in that provision for this case is "energy use," which means "the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under section 6293 of this title." *Id.* § 6291(4). Such test procedures "measure . . . energy use . . . of a covered product during a representative average use cycle or period of use." *Id.* § 6293(b)(3). Plaintiffs allege that the Law is expressly preempted by EPCA's preemption provision because it "concerns the energy use of EPCA-covered gas appliances." Compl. ¶ 61.

The District intends to move for summary judgment on Plaintiffs' sole claim. As a threshold matter, Plaintiffs' claim suffers from standing or ripeness issues because the Law has not been implemented. On the merits, Plaintiffs' claim fails as a matter of law because EPCA's

---

[1] The above describes how EPCA standards work for consumer appliances. EPCA enacts similar policies for industrial appliances. *E.g.*, 42 U.S.C. §§ 6313, 6316(b)(2)(A). For present purposes, nothing turns on the type of product, so this notice cites the provisions applicable to consumer products. *See Air Conditioning*, 410 F.3d at 496 n.2 (taking a similar approach).

text, structure, context, and history do not indicate that Congress intended to preempt the Law.

An express preemption claim tasks the Court with interpreting a preemption provision.

*Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996). The Court interprets the statute to "'identify

the domain expressly pre-empted' by that language" and determine Congress's purposes. *Id.* at

484–85 (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992)). But the Court

interprets that statute with the "starting assumption . . . that federal law does not override 'the

historic police powers of the States,' absent the 'clear and manifest' intent of Congress." *Sickle

v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 346 (D.C. Cir. 2018) (quoting *Arizona v.

United States*, 567 U.S. 387, 400 (2012)). In ascertaining Congress's purposes, the Court looks

not just to text but to, among other things, the statute's structure, context, and history.

*Medtronic, Inc. v. Lohr*, 518 U.S. at 486; *Wyeth v. Levine*, 555 U.S. 555, 566 (2009).

Applying those principles to interpret EPCA here leads to the conclusion that the Law is

not preempted. The purpose of EPCA's preemption clause is to displace state efforts to adopt

competing energy conservation standards for certain appliances. Energy conservation standards

set parameters for the *quantity* of energy used by an appliance—not the type. For example, and

simplified, EPCA provides that refrigerators cannot use more than $x$ kilowatt hours per year, *see*

42 U.S.C. § 6295(b)(1), so states cannot set a standard that refrigerators in the state cannot use

more than $y$ kilowatt hours per year. Indeed, EPCA's current preemption provision was enacted

so manufacturers would not have to comply with "separate state appliance standards." *Air

Conditioning*, 410 F.3d at 500.

The Law, however, does not establish any "performance standard which prescribes . . . a

maximum quantity of energy use" for any covered appliance. 42 U.S.C. § 6291(6). In fact, the

Law mentions neither appliances nor quantities of energy. Instead, the Law is a building code

provision that specifies the type of energy that can be used in certain buildings. But the Law is agnostic to the quantity of energy used. And the Law—concerned with climate change and reducing emissions—is far off from the domain of EPCA: reducing reliance on foreign oil by conserving energy when using appliances. Recognizing as much, eleven circuit judges have endorsed the interpretation of EPCA summarized here. *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1119–26 (9th Cir. 2024) (Friedland, J., dissenting from the denial of rehearing en banc); *id.* at 1126 (Berzon, J., respecting the denial of rehearing en banc).

Accordingly, summary judgment in the District's favor is appropriate. Express preemption presents a question of law that can be determined on summary judgment. *Sickle*, 884 F.3d at 345 & n.3. "[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Plaintiffs agree that there is "no need to await further factual development." Compl. ¶ 20. Indeed, the Parties agreed that this case should be resolved on cross-motions for summary judgment. Jt. Mot. to Set Deadlines [14].

Date: December 10, 2024.                          Respectfully submitted,

                                                  BRIAN L. SCHWALB
                                                  Attorney General for the District of Columbia

                                                  STEPHANIE E. LITOS
                                                  Deputy Attorney General
                                                  Civil Litigation Division

                                                  */s/ Matthew R. Blecher*
                                                  MATTHEW R. BLECHER [1012957]
                                                  Chief, Civil Litigation Division, Equity Section

                                                  */s/ Honey Morton*
                                                  HONEY MORTON [1019878]
                                                  Assistant Chief, Equity Section

                                                  */s/ Adam J. Tuetken*
                                                  ADAM J. TUETKEN [242215]
                                                  Assistant Attorney General

Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 735-7474
Email: adam.tuetken@dc.gov

*Counsel for Defendant*