# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES,** *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>**DISTRICT OF COLUMBIA,**<br><br>  Defendant. | No. 1:24-cv-02942-ACR |

### NOTICE OF PLAINTIFFS' ANTICIPATED CROSS-MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR PRE-MOTION CONFERENCE

Pursuant to direction 7(f) of this Court's Standing Order and in response to Defendant's Notice Regarding Defendant's Anticipated Motion for Summary Judgment and Request for a Pre-Motion Conference at Docket No. 19, Plaintiffs—National Association of Home Builders of the United States, Restaurant Law Center, National Apartment Association, Maryland Building Industry Association, Washington Gas Light Company, Philadelphia-Baltimore-Washington Laborers' District Council, and Teamsters Local 96—submit this notice that they anticipate filing a cross-motion for summary judgment and respectfully request a pre-motion conference.

There is only one claim at issue in this case: Plaintiffs' preemption challenge to D.C. Law 24-177. That law, also referred to as the "D.C. Appliance Ban," prohibits the use of gas appliances in the construction of new and substantially improved commercial buildings, along with residential buildings over three stories, in the District of Columbia after December 31, 2026 (at latest). On its face, the D.C. Appliance Ban runs headlong into federal law—namely, the Energy Policy and Conservation Act ("EPCA"), which preempts any "State regulation concerning the . . . energy efficiency [or] energy use" of covered gas appliances, 42 U.S.C. § 6297(c), such as furnaces,

1

kitchen ranges, and water heaters, *see id.* §§ 6291(2), 6292.  The D.C. Appliance Ban and EPCA cannot coexist.

As a threshold matter, the District appears to take issue with the ripeness of Plaintiffs' preemption challenge and their standing to bring it.  But the detailed allegations that Plaintiffs provided in their complaint, supported by multiple declarations, amply demonstrate a concrete, ongoing, and justiciable dispute between the parties.  Plaintiffs and their members have suffered and will continue to suffer significant economic injuries that are directly traceable to the D.C. Appliance Ban.  In fact, its chilling effect has already taken a toll on the livelihoods of many of Plaintiffs' members.  This Court can redress Plaintiffs' injuries with a declaration that the D.C. Appliance Ban is preempted and a concomitant injunction preventing the District from enforcing it.

With respect to the merits of the preemption issue, Plaintiffs also anticipate moving for summary judgment.  As the District correctly observes, congressional purpose is the lodestar of the preemption analysis, and ascertaining that purpose includes looking not only to EPCA's plain text, but also to its structure, context, and history (both legislative and statutory).  *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485-86 (1996); *see also Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 346 (D.C. Cir. 2018).  Plaintiffs readily invite the Court to review each, as they all support the proposition that EPCA preempts the D.C. Appliance Ban.

Passed in 1975 and amended several times since then, EPCA establishes a national and comprehensive energy policy that regulates the energy use and energy efficiency of appliances. 89 Stat. 871, Pub. L. No. 94-163.  The original EPCA, to be sure, permitted significant state involvement in appliance regulation, allowing states to depart from federal standards so long as there was a substantial need.  Congress soon realized, however, that the growing patchwork of

disparate state regulations was simply unworkable.  Thus, with each passing amendment to EPCA, Congress clamped down on state experimentation and ratcheted up on national uniformity, ultimately settling on a regime that leaves no room for laws like the D.C. Appliance Ban—a reality several other states and localities have already recognized.  *See* Compl. at 3, ¶ 4.

The first amendment came in 1978, with the National Energy Conservation and Policy Act ("NECPA").  Pub. L. No. 95-619, 92 Stat. 3206.  NECPA required the U.S. Department of Energy ("DOE") to prescribe minimum energy efficiency standards for certain products, and it also strengthened the preemption provisions of EPCA, allowing state regulations more stringent than federal ones *only if* the DOE Secretary found that the regulation was backed by a significant state interest and would not unduly burden interstate commerce.  Despite these new requirements, DOE did not initially adopt minimum energy standards.  Instead, it adhered to a general policy of granting preemption waivers to states.  The result, in turn, was a fractured and proliferating system of separate state appliance standards, with no sign of slowing down.  S. Rep. No. 100-6 (1987).

Congress again responded in 1987 with the National Appliance Energy Conservation Act ("NAECA").  Pub. L. No. 100-12, 101 Stat. 103.  As lawmakers expressly acknowledged, the growing patchwork of differing state regulations complicated the appliance manufacturing market and brought substantial confusion and uncertainty.  Thus, in passing NAECA, Congress sought to reduce manufacturers' regulatory burdens by establishing national energy conservation standards.  S. Rep. 100-6, at 1-4 (1987); H.R. Rep. No. 100-11, at 24, 30 (1987).  To that end, NAECA established federal efficiency standards for residential appliances and amended EPCA's preemption provision again, making it even more difficult for states to obtain preemption waivers.  *See* 42 U.S.C. § 6297(d)(1)(B)-(C).

The last and final amendment to EPCA came in 1992 with the Energy Policy Act, Pub. L. No. 102-486, 106 Stat. 2776, which expanded the federal appliance program to include energy efficiency standards for industrial appliances. Thus, in its present form, EPCA covers both consumer and industrial appliances and sets federal standards for the energy use and efficiency of those products.

The upshot of EPCA's legislative and statutory history, in short, is a manifest congressional purpose to nationalize energy use and energy conservation standards of covered appliances and prevent states and localities from disrupting the uniformity that these national standards yield. The text of EPCA bears this out, as it expressly preempts state regulations concerning the energy use of consumer and industrial appliances: "[N]o State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product," unless the regulation meets one of two narrow exceptions that the District does not invoke here. 42 U.S.C. § 6297(c). The D.C. Appliance Ban—which directly regulates the quantity of natural gas consumed by appliances—falls squarely under EPCA's preemption provision. It effectively reduces the quantity of natural gas used by EPCA-covered products to zero. As the Ninth Circuit recently recognized, "EPCA would no doubt preempt an ordinance that directly prohibits the use of covered natural gas appliances in new buildings." *Cal. Rest. Ass'n v. City of Berkeley*, 65 F.4th 1045, 1107 (9th Cir. 2024). That is precisely what the D.C. Appliance Ban does. There is "no doubt," therefore, that EPCA preempts it.

In sum, the text, structure, and history of EPCA, as well persuasive precedent from the Ninth Circuit, all support Plaintiffs' position on preemption. Plaintiffs accordingly request a pre-motion conference and that the Court grant their ensuing cross-motion for summary judgment.

Date: December 17, 2024

        Respectfully submitted,

        BAKER BOTTS L.L.P.

        __/s/ Megan Berge_____
        Megan H. Berge (Bar ID: 983714)
        Scott Novak (Bar ID: 1736274)
        J. Mark Little (*pro hac vice*)
        700 K St NW
        Washington, DC
        (P) 202-639-1333
        (F) 202-508-9334
        megan.berge@bakerbotts.com
        scott.novak@bakerbotts.com
        *Counsel for National Association of Home Builders of the United States, Restaurant Law Center, National Apartment Association, Maryland Building Industry Association, and Washington Gas Light Company*

        RESTAURANT LAW CENTER

        __/s/ Angelo Amador_____
        Angelo Amador (Bar ID: 480031)
        2055 L St NW
        Washington, DC 20036
        (P) 202-331-5913
        (F) 202-331-2429
        AAmador@restaurant.org
        *Counsel for Restaurant Law Center*

        LIUNA, MID-ATLANTIC REGION

        __/s/ Brian Petruska_____
        Brian Petruska (Bar ID: 498321)
        1875 Explorer Dr, Ste. 920
        Reston, VA 20190
        (P) 703-860-4194
        (F) 703-860-1865
        bpetruska@maliuna.org
        *Counsel for Philadelphia-Baltimore-Washington Laborers' District Council*

        MOONEY, GREEN, SAINDON, MURPHY & WELCH, P.C

          /s/ Lauren McDermott
        Lauren McDermott (Bar ID: 1008301)
        1920 L St NW
        Washington, DC 20036
        (P) 202-783-0010
        (F) 202-783-6088
        lmcdermott@mooneygreen.com
        *Counsel for Teamsters Local 96*

**CERTIFICATE OF SERVICE**

This certifies that, on December 17, 2024, a true and correct copy of the above and foregoing was served on all counsel of record via the Court's electronic filing system and/or electronic mail.

/s/ Scott Novak
Scott Novak
700 K St NW
Washington, DC
(P) 202-639-1316
scott.novak@bakerbotts.com
*Counsel for National Association of Home Builders of the United States, Restaurant Law Center, National Apartment Association, Maryland Building Industry Association, and Washington Gas Light Company*