Case No. 1:24-cv-02942-ACR

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**NATIONAL ASSOCIATION OF HOME BUILDERS, ET AL,**

**PLAINTIFFS,**

**v.**

**DISTRICT OF COLUMBIA**

**DEFENDANT**

## MOTION OF AMERICAN GAS ASSOCIATION
## FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF
## IN SUPPORT OF PLAINTIFFS

Gary A. Wilson, Esquire
Attorney ID # 1012341
POST & SCHELL, P.C.
Suite 600
607 14tth Street NW
Washington, D.C. 20005-2006
gwilson@postschell.com

Christopher J. Barr, Esquire
Attorney ID # 375372
POST & SCHELL, P.C.
Suite 600
607 14tth Street NW
Washington, D.C. 20005-2006
cbarr@postschell.com

*Attorneys for Amicus Curiae American*
*Gas Association*

Michael L. Murray, Esquire
Attorney ID # 472841
American Gas Association
400 N. Capitol St., NW
Washington, DC 20001
(202) 824-7090
MMurray@aga.org

Pursuant to Local Rule LCvR7, Motions, (o), Brief of an Amicus Curiae and FRAP 29(a)(4), the American Gas Association ("AGA"), respectfully requests leave to file an out of time amicus brief in support of Plaintiffs in this proceeding.

As grounds for this Motion, AGA states:

1.    The *amicus curiae* American Gas Association, represents critical domestic infrastructure – namely, local natural gas distribution companies that deliver natural gas to homes and businesses.    There are more than 77 million residential, commercial, and industrial natural gas customers in the U.S., of which 95 percent — more than 73 million customers — receive their gas from AGA members.  AGA is an advocate for natural gas utility companies and their customers, and provides a broad range of programs and services for member natural gas pipelines, marketers, gatherers, international natural gas companies, and industry associates.    Today, natural gas meets more than thirty percent of the United States' energy needs.[1]

2.    AGA and its members have a substantial interest in continued investment in and development of natural gas infrastructure, and in ensuring predictable and consistent laws and court rulings that affect that infrastructure.  The gas they move heats millions of American homes, and generates over 30 percent of the nation's

---

[1] *See* AGA, *About Us,* https://www.aga.org/about/ (last visited May 14, 2025).

electricity.[2]  Nearly 187 million Americans and 5.5 million businesses use natural gas.[3]  Demand for natural gas continues to increase because it is abundant, clean, safe, and cost-effective, and reliable infrastructure will be needed for the foreseeable future.[4]

3.    AGA and its members have a substantial interest in the continued ability of natural gas utilities to provide clean and efficient natural gas to consumers across the United States.  Additionally, AGA has an interest in ensuring laws and regulations affecting the unique utility framework of regulatory oversight and private investment are consistent with municipal/utility reciprocal legal commitments and constitutional principles.

4.    AGA's member natural gas local distribution companies ("LDCs" or "natural gas utilities") own and operate local natural gas distribution pipeline systems that typically receive natural gas supplies that have been transported on the interstate pipeline system.  LDCs deliver natural gas under state-regulated rates and terms of service, directly to residential, commercial, and industrial customers, including restaurants.

---

[2] *See* U.S. Energy Info. Admin., *What is U.S. electricity generation by energy source?*, https://www.eia.gov/tools/faqs/faq.php?id=427&t=3 (last visited May 14, 2025).

[3] *See* AGA, *2022 Playbook*, https://playbook.aga.org/ (last visited May 14, 2025).

[4] *See* U.S. Energy Info. Admin., *Annual Energy Outlook 2020*, https://www.eia.gov/outlooks/aeo/ (last visited May 14, 2025).

5.    This brief should be of assistance to the Court because it provides information about the natural gas distribution industry, which supplies natural gas to the consumers and businesses whose use of natural gas appliances is affected by the local statute at issue in this case. Judicial decisions affecting the ability of consumers to use natural gas as an energy source have a direct impact on gas utilities, and in turn any statutorily mandated reductions in natural gas use would affect the rates and services available to LDCs' existing consumers. AGA has a direct interest in ensuring that judicial decisions are made in light of a full record as to the role of local regulation on the use and distribution of natural gas under existing regulatory structures and doctrines.

6.    In accordance with Local Rule LCvR7, Motions, (o), Brief of an Amicus Curiae and FRAP 29(a)(4), all parties in this case have either consented or do not oppose the filing of this *amicus* brief.

8.    AGA submits that the natural gas utility perspective that the accompanying brief brings for the Court's consideration provides grounds for granting this Motion. The issues raised by the District of Columbia ordinance raise profound concerns for natural gas utilities and their customers, both in the District of Columbia and in municipalities more broadly across the nation. Yet, the public utility context is nearly entirely absent from the briefing in this case to date. AGA submits that the benefit of this additional perspective supports acceptance of the amicus brief at this

4

time. The brief provides relevant matters to the court's attention that the parties and
*amici curiae* have not presented and provides a substantive contribution to this case.
The brief is intended to assist the  Court by providing information on a specialized
area of law and regulatory regime.

9.      Accordingly, AGA respectfully requests leave to file the attached amicus brief
in support of the Plaintiffs.

**Respectfully Submitted**,

> */s/ Gary A. Wilson Esquire*
> Gary A. Wilson, Esquire
> Attorney ID # 1012341
> POST & SCHELL, P.C.
> Suite 600
> 607 14tth Street NW
> Washington, D.C. 20005-2006
> gwilson@postschell.com
>
> Christopher J. Barr, Esquire
> Attorney ID # 375372
> POST & SCHELL, P.C.
> Suite 600
> 607 14tth Street NW
> Washington, D.C. 20005-2006
> cbarr@postschell.com

Michael L. Murray, Esquire
Attorney ID # 472841
American Gas Association
400 N. Capitol St., NW
Washington, DC 20001
(202) 824-7071
MMurray@aga.org

*Attorneys for American Gas Association*

**Dated:** May 15, 2025

## DISCLOSURE STATEMENTS

Pursuant to Rule 26.1 of the Federal Rules of Appellate, the American Gas Association hereby submits the following corporate disclosure statement:

The American Gas Association ("AGA") is an incorporated, not-for-profit trade association representing local energy companies that deliver natural gas in the United States.  AGA has no parent companies, subsidiaries, or affiliates that have issued publicly traded stock.  Some AGA member companies are corporations with publicly traded stock.

/s/ *Gary A. Wilson, Esquire*
Gary A. Wilson, Esquire
Attorney ID # 1012341
POST & SCHELL, P.C.
Suite 600
607 14tth Street NW
ngton, D.C. 20005-2006
gwilson@postschell.com

Christopher J. Barr, Esquire
Attorney ID # 375372
POST & SCHELL, P.C.
Suite 600
607 14tth Street NW
Washington, D.C. 20005-2006
cbarr@postschell.com

Michael L. Murray, Esquire
Attorney ID # 472841
American Gas Association
400 N. Capitol St., NW
Washington, DC 20001
(202) 824-7071

MMurray@aga.org

*Attorneys for American Gas Association*

**Dated**: May 15, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify the following:

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d) because it contains 830 words and is less than 10 pages in length.

This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this motion has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Gary A. Wilson, Esquire*

Gary A. Wilson, Esquire
Attorney ID # 1012341
POST & SCHELL, P.C.
Suite 600
607 14tth Street NW
Washington, D.C. 20005-2006
gwilson@postschell.com

Christopher J. Barr, Esquire
Attorney ID # 75372
POST & SCHELL, P.C.
Suite 600
607 14tth Street NW
Washington, D.C. 20005-2006
cbarr@postschell.com

Michael L. Murray, Esquire
Attorney ID # 472841
American Gas Association
400 N. Capitol St., NW
Washington, DC 20001
(202) 824-7071
MMurray@aga.org

*Attorneys for American Gas Association*

**Dated:** May 15, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2025, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification

of such filing to all registered CM/ECF users.

/s/ Gary A. Wilson, Esquire

Gary A. Wilson, Esquire
Attorney ID # 1012341
POST & SCHELL, P.C.
Suite 600
607 14tth Street NW
Washington, D.C. 20005-2006
gwilson@postschell.com

Christopher J. Barr
Attorney ID # 75372
POST & SCHELL, P.C.
Suite 600
607 14tth Street NW
Washington, D.C. 20005-2006
cbarr@postschell.com

Michael L. Murray
Attorney ID # 472841
American Gas Association
400 N. Capitol St., NW
Washington, DC 20001
(202) 824-7071
MMurray@aga.org

*Attorneys for American Gas Association*

**Dated:** May 15, 2025

Case No. 1:24-cv-02942-ACR

---

## IN THE UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

### NATIONAL ASSOCIATION OF HOME BUILDERS, ET AL.

### PLAINTIFFS,

### v.

### DISTRICT OF COLUMBIA

### DEFENDANT.

---

### BRIEF OF *AMICUS CURIAE* AMERICAN GAS ASSOCIATION
### IN SUPPORT OF PLAINTIFFS

Gary A. Wilson, Esquire
POST & SCHELL, P.C.
Suite 600
607 14th Street NW
Washington, D.C. 20005-2006
gwilson@postschell.com

Christopher J. Barr, Esquire
POST & SCHELL, P.C.
Suite 600
607 14 Street NW
Washington D.C. 20005-2006

Michael L. Murray, Esquire
American Gas Association
400 N. Capitol St., NW
Washington, DC 20001
(202) 824-7071
mmurray@aga.org

*Attorneys for Amicus Curiae American Gas Association*

## DISCLOSURE STATEMENTS

Pursuant to Local Rule LCvR7, Motions, (o), Brief of an Amicus Curiae and FRAP 29(a)(4), *amicus curiae* the American Gas Association hereby submits the following corporate disclosure statement:

The American Gas Association ("AGA") is an incorporated, not-for-profit trade association representing local energy companies that deliver natural gas in the United States.  AGA has no parent companies, subsidiaries, or affiliates that have issued publicly traded stock.  Some AGA member companies are corporations with publicly traded stock.

<u>/s/ Gary A. Wilson, Esquire</u>

Gary A, Wilson, Esquire
Attorney ID # 1012341
POST & SCHELL, P.C.
Suite 600
607 14th Street NW
Washington, D.C. 20005-2006
gwilson@postschell.com

Michael L. Murray, Esquire
Attorney  ID # 472841
American Gas Association
400 N. Capitol St., NW
Washington, DC 20001
(202) 824-7071
MMurray@aga.org

Christopher J. Barr, Esquire
Attorney ID # 375372
POST & SCHELL, P.C.
Suite 600
607 14 Street NW
Washington, D.C. 20005-2006
cbarr@postschell.com

No counsel for a party authored this brief in whole or in part, and no person other than the amicus curiae, its members, or its counsel contributed money that was intended to fund the preparation or submission of this brief.

## STATEMENT REGARDING CONSENT TO FILE AND SEPARATE BRIEFING

Pursuant to Local Rule LCvR7, Motions, (o), Brief of an Amicus Curiae and FRAP 29(a)(4), all parties in this case have either consented or do not oppose the filing of this *amicus* brief.

Pursuant to Local Rule LCvR7, Motions, (o), Brief of an Amicus Curiae and FRAP 29(a)(4), counsel for *amicus curiae* AGA certifies that a separate brief is necessary to provide the broad perspective of the companies that AGA represents. As the national advocate for natural gas utility companies, AGA is particularly well-suited to provide the Court important context on subjects at issue in this appeal, which will assist the Court in resolving this case.

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES.............................................................. i

INTERESTS OF THE *AMICUS CURIAE*.................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 3

ARGUMENT ................................................................................ 4

    I.     Regulation of Utilities by State Authorities.................................... 5

    II.    A Utility May Not Be Denied an Opportunity to Earn a Fair Rate of Return ...................................................................... 8

    III.   The Utility Regulatory Model and Its Constitutional Protections Compel Societal and Legal Conclusions........................................ 9

CONCLUSION ............................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Duquesne Light Co. v. Barasch, 488 U.S. 299, 312 (1989)* ...................................... 8

*Federal Power Commission v. Hope Natural Gas Co.*,
  320 U.S. 591 (1944) .................................................................................. 7, 8, 9

*In re Permian Basin Area Rate Cases, 390 U.S. 747, 792 (1968)* ........................ 5, 8

*Munn v. Illinois*,
  94 U.S. 113 (1877) .............................................................................................. 5

*Olcott v. The Supervisors*,
  83 U.S. (16 Wall.) 678, 21 L. Ed. 382 (1872) ...................................................... 5

*Pensylvania R.R. Co. v. Puritan Coal Co.*,
  237 U.S. 121 (1915) ........................................................................................... 5

**Laws and Regulations**

D.C. Law 24-177. ................................................................................................... 8

**Other Authorities**

1 Energy Law and Transactions ........................................................................... 5, 6

AGA, *2022 Playbook*, https://playbook.aga.org/ (last visited May 14,
  2025) ................................................................................................................. 1

AGA, *About Us,* https://www.aga.org/about/ (last visited May 14,
  2025) ................................................................................................................. 1

Edward L. Glaeser; Claudia Goldin, *Corruption and Reform: Lessons
  from America's Econonic History,* (2006) ............................................................. 6

Miller, *Railroads and the Granger Laws* (1971) ...................................................... 5

U.S. Energy Info. Admin., *Annual Energy Outlook 2025*,
  https://www.eia.gov/outlooks/aeo/ ....................................................................... 2

U.S. Energy Info. Admin., *What is U.S. electricity generation by energy source?*,
https://www.eia.gov/tools/faqs/faq.php?id=427&t=3 ......................................... 1

## INTERESTS OF THE AMICUS CURIAE

The *amicus curiae* American Gas Association ("AGA") represents critical domestic infrastructure – namely, local natural gas distribution companies that deliver natural gas to homes and businesses. There are more than 77 million residential, commercial, and industrial natural gas customers in the U.S., of which 96 percent — more than 73 million customers — receive their gas from AGA members. AGA is an advocate for natural gas utility companies and their customers, and provides a broad range of programs and services for member natural gas pipelines, marketers, gatherers, international natural gas companies, and industry associates. Today, natural gas meets more than thirty percent of the United States' energy needs.[1]

AGA and its members have a substantial interest in the unique regulatory model that governs their business, and in ensuring predictable and consistent laws and court rulings that affect that model. The gas they move heats millions of American homes and generates over 30 percent of the nation's electricity.[2] Nearly 187 million Americans and 5.8 million businesses use natural gas.[3] Demand for

---

[1]    *See* AGA, *About Us,* https://www.aga.org/about/ (last visited May 14, 2025).

[2]    *See* U.S. Energy Info. Admin., *What is U.S. electricity generation by energy source?*, https://www.eia.gov/tools/faqs/faq.php?id=427&t=3 (last visited May 14, 2025).

[3]    *See* AGA, *2022 Playbook*, https://playbook.aga.org/ (last visited May 14, 2025).

natural gas continues to increase because it is abundant, clean, safe, and cost-effective, and reliable infrastructure will be needed for the foreseeable future.[4]

AGA and its members have a substantial interest in the continued ability of natural gas utilities to provide clean and efficient natural gas to consumers across the United States.   Additionally, AGA has an interest in ensuring laws and regulations affecting the unique utility framework of regulatory oversight and private investment are followed.

This brief should be of assistance to the Court because it provides information about the natural gas distribution industry, which supplies natural gas to the consumers and businesses via a unique regulatory model whose principle purpose is to serve the public interest.   Judicial decisions that impose new burdens on that regulatory model have a direct impact on gas utilities, their customers, and the regulatory model by which utility services are provided.   AGA has a direct interest in ensuring that judicial decisions are made in light of a full record of existing utility regulatory structures and doctrines.

---

[4]     *See* U.S. Energy Info. Admin., *Annual Energy Outlook 2023*, https://www.eia.gov/outlooks/aeo/ (last visited May 14, 2025).

## INTRODUCTION AND SUMMARY OF ARGUMENT

Central issues in this case include the scope and purpose of state regulation of utilities, the public service purpose of utilities, and the unique regulatory model that serves the needs of the state, utility customers, the general public, and utilities.

Local distribution of natural gas by privately-owned utilities is subject to regulation by state commissions, but that regulation focuses on several specific, though related goals: service to all who apply for service; provision of safe, continuous, adequate service; a just and reasonable price; and provision of service without undue discrimination.

The scope of state public utility regulators' authority to regulate utilities in the public interest is broad and manifested in numerous powers, such as granting utilities certificates to build facilities and provide services, and to regulate rates and services, to approve financing and acquisitions, to audit and review accounts, etc.

The role of the state authorities over utilities leads to a series of necessary conclusions: (1) the distribution of natural gas by a utility is considered to be a positive benefit to the public as well as an important right for consumers; (2) the state regulators' potent regulatory powers focus on achievement of the specific regulatory goals; (3) states do not have broad rights to impose additional costs or burdens on utilities and their customers outside the regulatory framework that would impair the utility's ability to earn a fair rate of return; and (4) regulatory decisions

by the state or municipal authorities is subject to review under, *inter alia*, the doctrine of the regulatory compact.

The regulatory compact is widely accepted as resulting from a 'bargain' struck between the utilities and the state, under which in return for the obligations imposed on the utility, the utility is entitled to a fair rate of return – a principal that is echoed by controlling Supreme Court rulings on the Constitutional limits to state regulation.

By imposing extraordinary new costs or burdens outside the regulatory framework states would create the likelihood that the local utility's right to a fair return on these principles would be impaired – to the detriment of not just the local utility, but also its customers. The creation of imposition of new costs or burdens is at variance with the fundamental purpose of both the utility and the public utility regulatory framework.

## ARGUMENT

AGA supports the Plaintiffs in their request for declaratory relief and permanent injunction. AGA opposes the imposition of costs or burdens on utilities and utility customers that do not arise from the regulatory framework or the regulatory compact. The imposition of costs or burdens outside that framework would result in an inequitable burden to the utility and its customers who could face long-term costs and consequences and would have profound implications to the long-established legal obligations fundamental to the municipal-utility model. The

purpose of this brief is to provide context for these concerns that would otherwise be absent from the record.

## I.    Regulation of Utilities by State Authorities

AGA submits that it is essential for the record to reflect accurately the nature and scope of state and local regulation of natural gas distribution, including the purpose of utility regulation, its goals and its scope. The Court should be fully informed as to how gas distribution is regulated, and how it is not regulated.

Utilities are regulated by state regulatory agencies, like the Public Service Commission of the District of Columbia ("Commission"), under state public utility statutes.

Current public utility regulation evolved from earlier state regulation of common carriers and similar entities, particularly railroads,[5] and earlier still, from common law regulatory concepts.[6]    Courts have long rejected challenges to such regulations of private businesses on the grounds, in effect, that "when private property is devoted to a public use, it is subject to public regulation."[7]    This general

---

[5]    *See e.g.*, 1 *Energy Law and Transactions* Section 2.03; *see also* Miller, *Railroads and the Granger Laws* (1971). Prior to railroads, ferries, coaches and certain other activities were subject to common law regulation.

[6]    *See e.g.*, *The Concept of a Business Affected with a Public Interest* 7-69, Hall (1940). The Supreme Court, in ruling on railroad case in 1915, quoted in its support "the common law of old." *Pennsylvania R.R. Co. v. Puritan Coal Co.*, 237 U.S. 121, 133 (1915).

[7]    *Munn v. Illinois*, 94 U.S. 113, 125 (1877) ("*Munn*"); *see also Olcott v. The Supervisors*, 83 U.S. (16 Wall.) 678, 697, 21 L. Ed. 382 (1873).

principle also informed the early 20[8] century growth of state regulation[8] as to a range of what we now consider to be public utilities – electric, natural gas, water, telephone and telegraph companies.  Indeed, the early 20th century also represented a time during which earlier regulatory structures at the municipal level were replaced with state-wide regulatory rules and administration.[9]

Broadly speaking, the goal of the state utility regulators is to ensure proper oversight as to four principal obligations of public: 1) service to all who apply for service; 2) provision of safe, adequate service; 3) a just and reasonable price; and 4) provision of service without undue discrimination.[10]

In order to ensure that these goals are met, public utility regulators across the nation have a number of key tools, including, direct oversight over the rates and terms of service provided by gas utilities, all of which are submitted to the regulators for approval in the form of tariffs filed by the gas utilities.  Although utilities file the rates, typically, approval of the state regulators is required for the rates to become effective.

Broad and intrusive authorities granted to state regulators – direct authority to approve the charges for service, authority to grant or deny entry and to oversee

---

[8]    *See e.g.*, "Regime Change and Corruption A History of Public Utility Regulation" by Werner Troesken, in *Corruption and Reform: Lessons from America's Economic History*, ed. Edward L. Glaeser and Claudia Goldin (2006) ("*Troesken*").

[9]    *Id.*

[10]    1 Energy Law and Transactions Section 2.01.

accounting and financing/acquisition/sales by the utilities – are far-ranging in scope. Yet, all are in direct furtherance of the central goals of the regulators, to ensure reasonable rates, service to those who seek it, and continued safe and adequate service to the public at a fair rate of return to the utility.

Moreover, the obligations imposed by the public utility statutes and regulatory commissions, when fulfilled by the public utility via investment in the necessary assets to meet such obligations, merge to create a further regulatory concept: the "regulatory compact."

The goal of the regulators is to ensure that the rates are "just and reasonable," which in turn results in rates that do not burden ratepayers with unnecessary costs, but also are sufficient to provide the utility with a fair return on its investment, as measured by the ability to attract capital.[11]

The granting of a utility franchise monopoly presumes that rates are minimized, and service offerings maximized, when these costs are spread over a larger number of units, whether number of customers or the quantity of sales. Reversing this regulatory goal and imposing extraordinary burdens outside the legislatively mandated scope of responsibilities, naturally, leads to *higher* short-run average costs and, consequently, prices.

---

[11]    *See e.g.*, *Federal Power Commission v. Hope Natural Gas Co.*, 320 U.S. 591, 603 (1944) ("*Hope*").

The D.C. Law 24-177 sets in motion the process for banning the use of natural gas in new construction. This will in turn lower the number of customers over which a utility's Commission approved rates are distributed and greatly increase costs to existing customers.

Overtime, as buildings are re-developed, there will be no new customers and fewer and fewer existing customers will be allowed access to gas and will be forced off the gas distribution system. Higher rates of service will also result in fewer customers. Both factors directly affect the ability for the utility to earn a fair rate of return.

## II.    A Utility May Not Be Denied an Opportunity to Earn a Fair Rate of Return

For over seventy years, this the United States Supreme Court has held that the Constitution guarantees a regulated business the opportunity to earn "enough revenue not only for operating expenses but also for the capital costs of the business." *Fed. Power Comm'n* v. *Hope Nat. Gas Co.*, 320 U.S. 591, 603 (1944).

In case after case, the Supreme Court of the United States Court has emphasized that government-imposed rates must allow affected firms to "maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed." *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 792 (1968); *cf. Duquesne Light Co.* v. *Barasch*, 488 U.S. 299, 312 (1989). Rate regulations must "guarantee the constitutionally required 'fair and reasonable

8

return," including "'enough revenue not only for operating expenses but also for the capital costs of the business.' " *Id.*[12]

District of Columbia Law 24-177 would impose a deep financial hardship on the natural gas utility regulatory model and impose extraordinary new costs on both existing customer and the local utility.  Prohibiting a utility access to customers and consigning it to an ever-dwindling customer base would not allow it "to attract capital" "commensurate with" those "in other enterprises having corresponding risks." *Id.*

While the state may well be able to prospectively ban injurious products, it cannot engage in a bait and switch that encourages and partners with private utilities to provide what it deems to be an essential public service and then denies the private party compensation for those state approved and state induced public service expenditures.  Nor can it take actions that threaten the financial integrity of ability to raise capital of those private partners.

Such extraordinary actions, impose undue costs on existing customers and drive up the cost of capital to the utility.

## III.    The Utility Regulatory Model and Its Constitutional Protections Compel Societal and Legal Conclusions

AGA submits that Sections I and II compel several conclusions.

---

[12]    *Hope Nat. Gas*, 320 U.S. at 603

First, regulated utility service is considered to be a positive benefit to the public, such that it is imbued with the public interest sufficiently to support regulation, and further that legislature concluded that the obligation to provide it exists, and safeguards against abuses.

Second, that although the state regulators have broad and potent powers to ensure that the goals of regulation are met – reasonable prices, broad access, safe and reliable supplies, not unduly discriminatory services, fair rate of return to the utility – those powers are focused on achievement of specific regulatory goals. New undue or unrelated extraordinary costs or burdens on the operations of the regulated utility may not be imposed, but only those costs and burdens necessary to ensure that the result of the utility's tariff, organization, and actions are to meet the above-noted regulatory goals.[13]

Third, any actions by the state or state regulator that might impact the utility operations or viability of gas utilities, is subject to review under, *inter alia*, the doctrine of the regulatory compact. A state or municipal action that has a substantial impact on the ability of a gas utility to perform its obligations or earn a return, may be considered a violation of the regulatory compact (which serves the state, the utility, customers and public welfare) and constitutional principles protecting property and due process and thus invalid.

---

[13]    A filed tariff governs a utility's relationship with its customers.

The fourth conclusion builds on the first three, pricing and provision of natural gas distribution show that an allocation of costs related to service is an important right for consumers as well as the utility and protected by the structure of the public utility laws, the regulatory compact, constitutional principles and the obligations imposed on the utility.

## CONCLUSION

The Court should consider the arguments raised in this brief, which support the relief sought by Plaintiffs.

**Respectfully Submitted,**

/s/    Gary A. Wilson, Esquire

Gary A, Wilson, Esquire
Attorney ID # 1012341
POST & SCHELL, P.C.
Suite 600
607 14th Street NW
Washington, D.C. 20005-2006
gwilson@postschell.com

Christopher J. Barr, Esquire
Attorney ID# 375372
POST & SCHELL, P.C
Suite 600
607 14 Street NW
Washington D.C. 20005-2006
cbarr@postchell.com

Michael L. Murray, Esquire
Attorney ID # 472841
American Gas Association
400 N. Capitol St., NW
Washington, DC 20001
MMurray@aga.org

**Dated:** May 15, 2025                    *Attorneys for American Gas Association*

12

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### CERTIFICATE OF COMPLIANCE FOR BRIEFS

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify the following:

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d) because it contains 2,357 words and is less than 25 pages in length.

This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this motion has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Gary A. Wilson, Esquire

Gary A. Wilson, Esquire
Attorney ID # 1012341
POST & SCHELL, P.C.
Suite 600
607 14th Street NW
Washington, D.C. 20005-2006

gwilson@postschell.com

Christopher J. Barr, Esquire
Attorney ID # 375372
POST & SCHELL, P.C
Suite 600
607 14th Street NW
Washington, D.C. 20005-2006
cbarr@postschell.com


Michael L. Murray, Esquire
Attorney ID # 472841
American Gas Association
400 N. Capitol St., NW
Washington, DC 20001
(202) 824-7071
MMurray@aga.org


*Attorneys for American Gas Association*

**Dated:** May 15, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered CM/ECF users.

*/s/ Gary A. Wilson, Esquire*

Gary A. Wilson, Esquire
Attorney ID # 1012341
POST & SCHELL, P.C.
Suite 600
607 14th Street NW
Washington, D.C. 20005-2006
gwilson@postschell.com

Christopher J Barr, Esquire
Attorney ID # 375372
POST & SCHELL, P.C
Suite 600
607 14th Street NW
Washington, D.C. 20005-2006
cbarr@postschell.com

Michael L. Murray, Esquire
Attorney ID #472841
American Gas Association
400 N. Capitol St., NW
Washington, DC 20001
(202) 824-7071
MMurray@aga.org

*Attorneys for American Gas Association*

**Dated:** May 15, 2025

**POST & SCHELL, P.C.**
**Gary A. Wilson, Esquire Attorney ID #_1012341**
607 14th Street NW
Suite 600
Washington D.C. 20005-2006
Phone: 202-661-6950
Fax: 202-661-6951
*Attorneys for Plaintiff, American Gas Association*

## IN THE UNITED STATES DISCTICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF HOME                **Case No. 1:24-cv-02942-ACR**
BUILDERS, ET. AL,
                        Plaintiffs,

            v.

DISTRICT OF COLUMBIA

                Defendant

## ORDER

**THIS MATTER**, having been opened to the Court by Post & Schell, P.C.,

attorneys for Plaintiff, American Gas Association, and the Court having considered

the moving papers herein.

**IT IS ON THIS _____ day of _____, 2025, HEREBY**

**ORDERED** that Plaintiff's American Gas Association's Motion for Leave To File

*Amicus Curiae* Brief In Support of Plaintiffs is **GRANTED.**

It is **FURTHER ORDERED** that copies of the within Order are to be served upon

attorneys within seven (7) days from the date hereof.

**BY THE COURT:**

_____

                                              J.