**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES,** *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **DISTRICT OF COLUMBIA,** <br><br> **Defendant.** | **No. 1:24-cv-02942-ACR** |

**REPLY BRIEF IN SUPPORT OF
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 1

    I.     Plaintiffs Fail to Meet the Standard for Facial Challenges. ................................... 1

    II.    EPCA Preempts Regulations Concerning Energy Use as Defined by
          EPCA. .......................................................................................................... 4

          A.     Text ................................................................................................ 4

               1.     "Energy Use" ..................................................................... 5

               2.     "Point of Use" ................................................................. 12

               3.     "Concerning" ................................................................... 14

          B.     Structure ..................................................................................... 19

          C.     Context ....................................................................................... 21

          D.     History ........................................................................................ 22

          E.     Purposes ..................................................................................... 23

          F.     Consequences ............................................................................. 25

          G.     Case Law .................................................................................... 26

          H.     Presumption Against Preemption ............................................... 27

    III.   EPCA Does Not Preempt the Fossil Fuel Prohibition. ........................................ 29

    IV.   Plaintiffs' Attacks on Other Parts of the Clean Buildings Act Are
          Unavailing. .................................................................................................. 33

    V.    Plaintiffs Are Not Entitled to the Relief They Seek. ........................................... 34

CONCLUSION ......................................................................................................... 35

# TABLE OF AUTHORITIES

## *Cases*

*Advoc. Christ Med. Ctr. v. Kennedy*,
145 S. Ct. 1262 (2025) ............................................................................................. 7

*Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*,
410 F.3d 492 (9th Cir. 2005) ................................................................................. 22

*Altria Grp., Inc. v. Good*,
555 U.S. 70 (2008) .................................................................................................. 27

*Am. Apparel & Footwear Ass'n, Inc. v. Baden*,
107 F.4th 934 (9th Cir. 2024) .................................................................................. 3

*Am. Fed'n of Gov't Emps., AFL-CIO v. United States*,
330 F.3d 513 (D.C. Cir. 2003) ............................................................................... 32

*Anderson v. Edwards*,
514 U.S. 143 (1995) .................................................................................................. 3

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ............................................................................................... 16

*Ass'n of Am. R.R. v. Costle*,
562 F.2d 1310 (D.C. Cir. 1977) ............................................................................. 13

*Ass'n of Contracting Plumbers of City of N.Y., Inc. v. City of New York*,
No. 23-cv-11292, 2025 WL 843619 (S.D.N.Y. Mar. 18, 2025) ..................... 17, 18, 25, 31

*Atlanta Channel, Inc. v. Solomon*,
583 F. Supp. 3d 174 (D.D.C. 2022) ...................................................................... 14

*Azar v. Allina Health Servs.*,
587 U.S. 566 (2019) ............................................................................................... 17

*Bahlul v. United States*,
77 F.4th 918 (D.C. Cir. 2023) ............................................................................... 28

*Bond v. United States*,
572 U.S. 844 (2014) .................................................................................... 23, 26, 27

*Bondi v. VanDerStok*,
145 S. Ct. 857 (2025) ............................................................................................. 14

*Brookens v. Acosta*,
297 F. Supp. 3d 40 (D.D.C. 2018) ........................................................................ 28

*Bucklew v. Precythe,*
    587 U.S. 119 (2019)......................................................................................... 2

*Burgess v. United States,*
    553 U.S. 124 (2008)......................................................................................... 5

*Cal. Coastal Comm'n v. Granite Rock Co.,*
    480 U.S. 572 (1987)......................................................................................... 4

*Cal. Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.,*
    519 U.S. 316 (1997)....................................................................................... 18

*Cal. Rest. Ass'n v. City of Berkeley,*
    89 F.4th 1094 (9th Cir. 2024) ....................................... 4, 6, 9, 12, 13, 18, 24, 26, 28

*Campaign Legal Ctr. v. Iowa Values,*
    691 F. Supp. 3d 94 (D.D.C. 2023)................................................................... 28

*Carcieri v. Salazar,*
    555 U.S. 379 (2009)......................................................................................... 7

*Cipollone v. Liggett Grp., Inc.,*
    505 U.S. 504 (1992)....................................................................................... 23

*City & Cnty. of S.F. v. EPA,*
    145 S. Ct. 704 (2025)..................................................................................... 15

*Clark v. Martinez,*
    543 U.S. 371 (2005)....................................................................................... 25

*Concert Inv., LLC v. SBA,*
    100 F.4th 215 (D.C. Cir. 2024)................................................................. 12, 13

*Consumer Data Indus. Ass'n v. Frey,*
    26 F.4th 1 (1st Cir. 2022)....................................................... 16, 18, 19, 20

*CSX Transp., Inc. v. Easterwood,*
    507 U.S. 658 (1993)....................................................................................... 23

*Cunningham v. Cornell Univ.,*
    145 S. Ct. 1020 (2025)................................................................................... 32

*Dan's City Used Cars, Inc. v. Pelkey,*
    569 U.S. 251 (2013)........................................................... 10, 11, 16, 17, 25

*Davis v. FEC,*
    554 U.S. 574 (2008)....................................................................................... 33

*DCC Propane, LLC v. KMT Enters., Inc.*,
147 F.4th 171 (2d Cir. 2025) ...................................................................................... 31

*Dep't of Agric. v. Kirtz*,
601 U.S. 42 (2024) ............................................................................................... 5, 6, 8

*Di Giorgio Fruit Corp. v. NLRB*,
191 F.2d 642 (D.C. Cir. 1951) ...................................................................................... 5

*Digital Realty Tr., Inc. v. Somers*,
583 U.S. 149 (2018) ............................................................................................... 5, 6, 7

*Doe v. Reed*,
561 U.S. (2010) ...................................................................................................... 2, 3

*DOE v. Saniborain LLC*,
No. 24-cv-2795, 2025 WL 2159185 (D.D.C. July 29, 2025) ..................................... 23

*Dotson v. District of Columbia*,
No. 24-cv-1864, 2024 WL 5046282 (D.D.C. Dec. 9, 2024) ...................................... 32

*Dubin v. United States*,
599 U.S. 110 (2023) ...................................................................... 9, 15, 16, 19

*Envtl. Def. v. Duke Energy Corp.*,
549 U.S. 561 (2007) ...................................................................................................... 6

*Garland v. Cargill*,
602 U.S. 406 (2024) ...................................................................................................... 5

*Geier v. Am. Honda Motor Co.*,
166 F.3d 1236 (D.C. Cir. 1999) .................................................................................. 27

*GenBioPro, Inc. v. Raynes*,
144 F.4th 258 (4th Cir. 2025) ..................................................... 23, 24, 25, 28, 32

*Georgia v. DOJ*,
--- F.4th ----, No. 23-5083, 2025 WL 2314892 (D.C. Cir. Aug. 12, 2025) ............... 29

*Gobeille v. Liberty Mut. Ins. Co.*,
577 U.S. 312 (2016) .................................................................................................... 19

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002) .................................................................................................... 25

*Happel v. Guilford Cnty. Bd. of Educ.*,
913 S.E.2d 174 (N.C. 2025) ....................................................................................... 28

*Hawaiian Airlines, Inc. v. Norris*,
  512 U.S. 246 (1994) ..................................................................................... 14

*Herron v. Fannie Mae*,
  861 F.3d 160 (D.C. Cir. 2017) ..................................................................... 28

*Hill v. DOI*,
  --- F.4th ----, No. 24-5011, 2025 WL 2394169 (D.C. Cir. Aug. 19, 2025) ........................... 34

*Hooks v. United States*,
  191 A.3d 1141 (D.C. 2018) ........................................................................... 34

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
  829 F.2d 1171 (D.C. Cir. 1987) ..................................................................... 26

*In re Pittsburgh & Lake Erie Props., Inc.*,
  290 F.3d 516 (3d Cir. 2002) ......................................................................... 10

*Jazz Pharms., Inc. v. Kennedy*,
  141 F.4th 254 (D.C. Cir. 2025) ..................................................................... 27

*Kansas v. Garcia*,
  589 U.S. 191 (2020) ....................................................................... 24, 26, 31

*Lamar, Archer & Cofrin, LLP v. Appling*,
  584 U.S. 709 (2018) ................................................................................. 10

*Little Sisters of the Poor v. Pennsylvania*,
  591 U.S. 657 (2020) ................................................................................. 23

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) ................................................................................. 14

*Lorillard Tobacco Co. v. Reilly*,
  533 U.S. 525 (2001) ............................................................................. 25, 31

*La. Pub. Serv. Comm'n v. FCC*,
  476 U.S. 355 (1986) ................................................................................. 21

*Lynch v. Tilden Produce Co.*,
  265 U.S. 315 (1924) ................................................................................... 5

*Marin Audubon Soc'y v. FAA*,
  121 F.4th 902 (D.C. Cir. 2024) ..................................................................... 20

*Marsh v. Mass. Coastal R.R. LLC*,
  214 N.E.3d 388 (Mass. 2023) ....................................................................... 28

*McClough v. United States*,
520 A.2d 285 (D.C. 1987) .......................................................................... 34

*Medina v. Planned Parenthood S. Atl.*,
145 S. Ct. 2219 (2025) ............................................................................... 25

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
583 U.S. 366 (2018) .................................................................................... 19

*Metro. Wash. Chapter, Associated Builders & Contractors, Inc. v. District of Columbia*,
62 F.4th 567 (D.C. Cir. 2023) ..................................................................... 32

*Mowrer v. DOT*,
14 F.4th 723 (D.C. Cir. 2021) ............................................................. 6, 8, 27

*Mozilla Corp. v. FCC*,
940 F.3d 1 (D.C. Cir. 2019) ........................................................................ 20

*Mulhern Gas Co. v. Mosley*,
No. 23-cv-1267, 2025 WL 2062194 (N.D.N.Y. July 23, 2025) ................ 11, 18, 26

*Murphy v. NCAA*,
584 U.S. 453 (2018) .................................................................................... 21

*NLRB v. Health Care & Ret. Corp. of Am.*,
511 U.S. 571 (1994) ...................................................................................... 8

*Nat'l Shooting Sports Found., Inc. v. James*,
144 F.4th 98 (2d Cir. 2025) ....................................................................... 2, 4

*Nat'l Urb. League v. Trump*,
No. 25-cv-471, 2025 WL 1275613 (D.D.C. May 2, 2025) ............................. 3

*New Prime Inc. v. Oliveira*,
586 U.S. 105 (2019) .................................................................................... 14

*N.Y. Rehab. Care Mgmt., LLC v. NLRB*,
506 F.3d 1070 (D.C. Cir. 2007) .................................................................. 29

*Newman v. Moore*,
--- F.4th ----, No. 24-5173, 2025 WL 2423848 (D.C. Cir. Aug. 22, 2025) ......... 2, 4

*Pileggi v. Wash. Newspaper Publ'g Co., LLC*,
146 F.4th 1219 (D.C. Cir. 2025) ............................................................. 5, 19

*Puerto Rico v. Franklin California Tax-Free Trust*,
579 U.S. 115 (2016) .................................................................................... 27

*Rawat v. C.I.R.*,
  108 F.4th 891 (D.C. Cir. 2024) ................................................................... 20

*Rothe Dev., Inc. v. DOD*,
  836 F.3d 57 (D.C. Cir. 2016) ..................................................................... 33

*Rowe v. N.H. Motor Transp. Ass'n*,
  552 U.S. 364 (2008) ................................................................................... 17

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
  592 U.S. 80 (2020) ............................................................................... 17, 18

*Saad v. SEC*,
  980 F.3d 103 (D.C. Cir. 2020) ................................................................... 28

*Sackett v. EPA*,
  598 U.S. 651 (2023) ................................................................................... 15

*Santos v. Collins*,
  No. 24-cv-1759, 2025 WL 1823471 (D.D.C. Feb. 26, 2025) ..................... 35

*Shaw v. Delta Air Lines, Inc.*,
  463 U.S. 85 (1983) ..................................................................................... 10

*Shuker v. Smith & Nephew, PLC*,
  885 F.3d 760 (3d Cir. 2018) ...................................................................... 29

*Sickle v. Torres Advanced Enter. Sols., LLC*,
  884 F.3d 338 (D.C. Cir. 2018) ................................................. 8, 16, 28, 29

*Sinclair Wyo. Ref. Co. v. EPA*,
  114 F.4th 693 (D.C. Cir. 2024) ................................................................. 16

*Solar Energy Indus. Ass'n v. FERC*,
  --- F.4th ----, No. 21-1126, 2025 WL 2599488 (D.C. Cir. Sept. 9, 2025) ......................... 12, 14

*Sprint Corp. v. FCC*,
  --- F.4th ----, No. 24-1224, 2025 WL 2371009 (D.C. Cir. Aug. 15, 2025) ........................... 32

*Steffan v. Perry*,
  41 F.3d 677 (D.C. Cir. 1994) (en banc) ...................................................... 4

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
  566 U.S. 560 (2012) ................................................................................... 14

*Texas v. United States*,
  798 F.3d 1108 (D.C. Cir. 2015) ................................................................... 9

*Trudel v. SunTrust Bank*,
924 F.3d 1281 (D.C. Cir. 2019) ................................................. 3

*Trump v. CASA, Inc.*,
145 S. Ct. 2540 (2025) ............................................................. 35

*Trump v. New York*,
592 U.S. 125 (2020) ................................................................. 33

*United States v. Dynamic Visions Inc.*,
971 F.3d 330 (D.C. Cir. 2020) ................................................. 32

*United States v. Miller*,
145 S. Ct. 839 (2025) ................................................ 15, 18, 22

*United States v. Salerno*,
481 U.S. 739 (1987) ................................................................... 1

*United States v. Santos*,
553 U.S. 507 (2008) ................................................................. 25

*United States v. Sup. Ct. of N.M.*,
839 F.3d 888 (10th Cir. 2016) ................................................. 2, 3

*United States v. Wilson*,
240 F.3d 39 (D.C. Cir. 2001) ..................................................... 3

*Util. Air. Reg. Grp. v. EPA*,
573 U.S. 302 (2014) ................................................................. 6, 7

*Valdez v. United States*,
320 A.3d 339 (D.C. 2024) ........................................................ 34

*Validus Reins., Ltd. v. United States*,
786 F.3d 1039 (D.C. Cir. 2015) ............................................... 15

*Van Buren v. United States*,
593 U.S. 374 (2021) ................................................................. 12

*Va. Uranium, Inc. v. Warren*,
587 U.S. 761 (2019) ................................................... 23, 24, 31

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) ................................................................. 24

*Ye v. GlobalTranz Enters., Inc.*,
74 F.4th 453 (7th Cir. 2023) ................................................... 10

*Zero Zone, Inc. v. DOE*,
 832 F.3d 654 (7th Cir. 2016) .................................................................... 29

## Statutes

42 U.S.C. § 6291 ........................................................................................... 6

42 U.S.C. § 6291(6) ..................................................................................... 29

42 U.S.C. § 6292(b)(1)(B) ......................................................................... 8, 9

42 U.S.C. § 6293(b)(3) ................................................................................ 29

42 U.S.C. § 6295(*l*)(1)(B) ......................................................................... 8, 9

42 U.S.C. § 6297(c) ............................................................................... 14, 19

42 U.S.C. § 6297(d) ..................................................................................... 11

42 U.S.C. § 6297(f) ...................................................................................... 10

42 U.S.C. § 6311 ........................................................................................... 6

D.C. Code § 35-251(b)(6) ........................................................................... 30

## Session Laws and Legislative Materials

Energy Policy and Conservation Act § 2, Pub. L. No. 94-163, 89 Stat. 871, 874 (1975) ........... 23

S. Rep. No. 105-227 (1998) ........................................................................ 13

## Regulations and Administrative Materials

42 Fed. Reg. 20,012 (Apr. 15, 1977) .......................................................... 13

42 Fed. Reg. 33,158 (June 29, 1977) ........................................................... 13

47 Fed. Reg. 14,424 (Apr. 2, 1982) ............................................................ 22

47 Fed. Reg. 57,198 (Dec. 22, 1982) .......................................................... 31

75 Fed. Reg. 59,470 (Sept. 27, 2010) ......................................................... 22

79 Fed. Reg. 17,726 (Mar. 28, 2014) .......................................................... 29

## Other Authorities

*The American Heritage Dictionary of the English Language* (1970) ................................... 29, 30

*Oxford English Dictionary* (2d ed. 1989) .............................................................................. 29, 30

**INTRODUCTION**

For being called an "Opposition" and "Reply," Plaintiffs' brief does not do much opposing or replying. *See* Pls.' Opp'n [38]. Plaintiffs mostly rehash arguments they already made and fail to respond to many of the District's arguments. When Plaintiffs do respond, they ignore key, binding precedents that decide the disputes here. As a result, there are straightforward ways to resolve this case. Foremost, regardless of whose interpretation of the Energy Policy and Conservation Act (EPCA) is correct, Plaintiffs' claim fails because they do not even try to meet the correct standard for facial challenges. If the Court nonetheless reaches the interpretive issue, EPCA preempts regulations concerning "energy use" as that term is defined by EPCA. No part of the Clean Energy DC Building Code Amendment Act of 2022 (the Clean Buildings Act) regulates "energy use." Even if it did, Plaintiffs are not entitled to sweeping relief invalidating the entire Act, which would contradict severability doctrine, principles of equity, and the record.

**ARGUMENT**

**I.      Plaintiffs Fail to Meet the Standard for Facial Challenges.**

Plaintiffs bring a pre-enforcement facial challenge to the Clean Buildings Act, which is "the most difficult challenge to mount successfully, since [Plaintiffs] must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Plaintiffs resist that standard rather than meet it. *See* Pls.' Opp'n at 33–34. But Plaintiffs cannot change the law on facial challenges. Thus, the Court can reject Plaintiffs' claim on the simple, narrow ground that Plaintiffs fail to show that EPCA, however interpreted, preempts the Act in all applications.

Plaintiffs argue that facial challenges do not "attack *all* conceivable applications" of a statute, and they need only prove that the Clean Buildings Act is invalid as applied to "EPCA-

covered gas appliances." *Id.* at 33. That is wrong. A facial challenge *is* "a claim that the law or policy at issue is unconstitutional in all its applications." *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019). As such, "classifying a lawsuit as facial" determines "the extent to which the invalidity of the challenged law must be demonstrated." *Id.* Namely, Plaintiffs must prove that there are no possible "constitutional applications" of the Act. *Newman v. Moore*, --- F.4th ----, ----, No. 24-5173, 2025 WL 2423848, at *8 (D.C. Cir. Aug. 22, 2025). Plaintiffs thus err in arguing that they "need[ ] to show only that some portion of the statute's applications are unconstitutional"— as the D.C. Circuit explained when rejecting an identical argument. *Id.* at *9; *accord Nat'l Shooting Sports Found., Inc. v. James* (*NSSA*), 144 F.4th 98, 106 (2d Cir. 2025).

To nonetheless resist the "settled standard" for facial challenges, *Newman*, 2025 WL 2423848, at *8, Plaintiffs rely on two unique cases, *Doe v. Reed*, 561 U.S. 194 (2010), and *United States v. Supreme Court of New Mexico*, 839 F.3d 888 (10th Cir. 2016). Pls.' Opp'n at 33. In *Reed*, referendum petition sponsors and signatories challenged a public records law as applied to referendum petitions. 561 U.S. at 193–94. In *New Mexico*, the United States challenged a state rule of professional conduct as applied to federal prosecutors. 839 F.3d at 892, 896–97. The courts observed that the challenges had characteristics of both facial and as-applied challenges. *Reed*, 561 U.S. at 193–94; *N.M.*, 839 F.3d at 908. So the courts concluded that the challengers needed to prove that the laws could never be constitutionally applied to referendum petitions and federal prosecutors. *Reed*, 561 U.S. at 194; *N.M.*, 839 F.3d at 916.

These cases are unhelpful to Plaintiffs for two reasons. First, both cases determined what the plaintiffs needed to prove based on the "claim and the relief that would follow." *Reed*, 561 U.S. at 194–95; *N.M.*, 839 F.3d at 907. Unlike the narrower claims in those cases, Plaintiffs' Complaint challenges "the facial validity of [the Act]," Compl. [1] ¶ 20, alleges that "[t]here is

no set of circumstances under which [the Act] would be valid," *id.*, and seeks to invalidate the Act in its entirety, *id.* ¶¶ 84–85; *see Reed*, 561 U.S. at 193–94 (relying on complaint to determine the nature of the claim and relief sought). Plaintiffs' summary judgment motion and proposed orders seek the same, sweeping, facial relief. Pls.' Mot. for Summ. J. [26] at 1; Proposed Order [26] at 1; Proposed Order [38-2] at 1; *see Nat'l Urb. League v. Trump*, No. 25-cv-471, 2025 WL 1275613, at *14 (D.D.C. May 2, 2025) (relying on motion and proposed orders to determine the nature of the claim and relief sought). Because Plaintiffs challenge the Act "on its face" and "seek to enjoin its enforcement altogether," Plaintiffs must show that the Act can never be applied without being preempted. *Anderson v. Edwards*, 514 U.S. 143, 155 n.6 (1995).

Plaintiffs cannot change their claim now. *See* Pls.' Opp'n at 34. For one, Plaintiffs cannot amend their claim through briefing. *Trudel v. SunTrust Bank*, 924 F.3d 1281, 1287–89 (D.C. Cir. 2019). For another, Plaintiffs—despite having the burden—forfeited their arguments on the facial standard by failing to raise them in their opening brief. *United States v. Wilson*, 240 F.3d 39, 45 (D.C. Cir. 2001). Even if the Court were inclined to overlook all this, Plaintiffs in this posture cannot bring anything but a facial challenge to the entire Act, as explained next.

Second, *Reed* and *New Mexico* involved uniquely hybrid claims, and there was a factual record showing how the challenged laws had been applied. *Reed*, 561 U.S. at 192–93; *N.M.*, 839 F.3d at 896–97. In contrast, Plaintiffs' claim has no characteristics of an as-applied challenge. The Act has not been applied to Plaintiffs. In fact, the Act will *never* be applied to most Plaintiffs because it only applies to building permit applicants, but most Plaintiffs do not apply for building permits; they are, for example, labor unions or a gas utility. Moreover, this case lacks the factual record present in *Reed* and *New Mexico* and necessary for a hybrid or as-applied challenge. *Nat'l Urb. League*, 2025 WL 1275613, at *14, 16; *Am. Apparel & Footwear Ass'n,*

*Inc. v. Baden*, 107 F.4th 934, 943 n.3 (9th Cir. 2024). As a result, Plaintiffs cannot seek more "limit[ed]" relief of invalidating the Act *as applied to* covered products. Pls.' Opp'n at 34.[1] "[G]iven the posture" of this pre-enforcement preemption challenge, Plaintiffs "must" raise a "purely facial challenge." *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 580 (1987). And so, Plaintiffs' "case must stand or fall on the question whether *any possible*" applications of the Act "would be pre-empted." *Id.* at 588; *see also NSSA*, 144 F.4th at 107–08.

Plaintiffs do not argue, in the alternative, that they meet that standard. Rather, Plaintiffs "agree" that the Act can be applied without being preempted. Pls.' Opp'n at 34. That concession and Plaintiffs' non-argument mean that their facial challenge fails. *Newman*, 2025 WL 2423848, at *8; *Steffan v. Perry*, 41 F.3d 677, 693 (D.C. Cir. 1994) (en banc).

## II.     EPCA Preempts Regulations Concerning Energy Use as Defined by EPCA.

The interpretive question here is whether EPCA preempts state regulations concerning "energy use" as defined by EPCA or, rather, any state regulation that merely relates to covered products and energy. The first interpretation is correct and the only one supported by text, structure, context, history, purpose, consequences, case law, and the presumption against preemption.

### A.     Text

The Parties dispute the meaning of three terms: "energy use," "concerning," and "point of use." Cardinal rules of statutory interpretation decide each dispute.

---

[1]     Plaintiffs incorrectly suggest that *California Restaurant Association v. City of Berkeley* (*Berkeley*), 89 F.4th 1094 (9th Cir. 2024), tailored its injunction this way. Pls.' Opp'n at 34. *Berkeley* was an appeal of a dismissal, so there was no injunction. 89 F.4th at 1099. Moreover, *Berkeley* did not treat the claim before it as a facial challenge. As a result, this Court will not set up a circuit split with *Berkeley* if the Court resolves this case on the ground that Plaintiffs fail to meet the standard for facial challenges.

### 1. **"Energy Use"**

The most important term in EPCA's preemption provision is "energy use."  EPCA defines "energy use" to refer to a fixed figure estimating the typical quantity of energy a product is designed to consume and is determined by laboratory testing procedures set by the Department of Energy (DOE).  Mem. of P. & A. in Supp. of Def.'s Cross-Mot. for Summ. J. (Def.'s Mot.) [30] at 12–14.  Plaintiffs do not dispute that EPCA defines "energy use" to refer to such a figure, or that this definition applies in almost every provision where "energy use" appears.  *See* Pls.' Opp'n at 11, 13.  They argue instead that the statutory definition of "energy use" somehow does not apply in the preemption provision.  *Id.* at 13–14.  So the question is this:  In EPCA's preemption provision, does the Court apply EPCA's definition of "energy use" or Plaintiffs' doctored version that nixes the second clause of the definition?

A clear, longstanding "principle resolves [this] question."  *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018).  "'When a statute includes an explicit definition, [the Court] must follow that definition,' even if it varies from a term's ordinary meaning."  *Id.* (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008)).  Following the definition means following the *entire* definition—not "disregard[ing]" half of it, *Pileggi v. Wash. Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1235 (D.C. Cir. 2025), or "omit[ting] essential elements" by "strik[ing] out words and phrases," *Lynch v. Tilden Produce Co.*, 265 U.S. 315, 321 (1924).  After all, "[w]hen Congress takes the trouble to define the terms it uses, a court must respect its definitions," *Dep't of Agric. v. Kirtz*, 601 U.S. 42, 59 (2024), or else a court "would simply be rewriting the statute," *Di Giorgio Fruit Corp. v. NLRB*, 191 F.2d 642, 646 (D.C. Cir. 1951); *see Garland v. Cargill*, 602 U.S. 406, 428 (2024).  Thus, "energy use" means what Congress says it means.  "Leaving no doubt as to the definition's reach," *Digital Realty*, 583 U.S. at 160–61, the statute says that its

definition of "energy use" applies "[f]or purposes of this part" of EPCA, which includes the

preemption provisions, 42 U.S.C. § 6291 (consumer); *id.* § 6311 (industrial).

This is not one of the vanishingly few "exceptional" cases in which the Court may

abandon a statutory definition. *Kirtz*, 601 U.S. at 62. A court will not deviate from a statutory

definition unless "applying the definition would be incompatible with Congress's regulatory

scheme or would destroy one of the statute's major purposes." *Id.* at 60 (cleaned up). That is an

exceedingly high bar. To illustrate, the Supreme Court adhered to a statutory definition despite

concerns that it "would create obvious incongruities," "produce anomalous results," "vitiate

much of the statute's protection," and "narrow" a clause "to the point of absurdity." *Digital

Realty*, 583 U.S. at 164 (cleaned up). To further illustrate, in the only case cited by Plaintiffs in

which a court deviated from a statutory definition, *see* Pls.' Opp'n at 13–14, the Supreme Court

*narrowed* the definition because, among other reasons, applying it to a permitting requirement

would "render" the permitting program "unworkable," as the number of sources subject to the

requirement "would jump from fewer than 15,000 to about 6.1 million," and "annual

administrative costs would balloon from $62 million to $21 billion." *Util. Air Regul. Grp. v.

EPA*, 573 U.S. 302, 320–22 (2014).[2]

---

[2] Plaintiffs claim that two other cases show courts abandoning statutory definitions, but they do not. Pls.' Opp'n at 13–14. In *Mowrer v. Department of Transportation*, 14 F.4th 723 (D.C. Cir. 2021), the D.C. Circuit *adhered* to a statutory definition in one provision, even *assuming*, without deciding, that it could not apply in another provision, *id.* at 730. In *Environmental Defense v. Duke Energy Corp.*, 549 U.S. 561 (2007), the Supreme Court held that an agency, during the bygone age of *Chevron*, could implement a definition differently in two regulatory programs, as long as the agency's construction was "within the limits of what is reasonable, as set by the [statute's] common definition," *id.* at 576 (internal footnote omitted).

Nor is *Berkeley* helpful to Plaintiffs because *Berkeley* did not show any awareness that it was abandoning the statutory definition of "energy use," let alone apply the *Kirtz* standard. Instead, *Berkeley* quoted half the definition and pretended like that was the full definition—an egregious error. 89 F.4th at 1102, 1105. A reader would not know the correct definition until she reached Judge Friedland's opinion. *Id.* at 1121.

Nothing close to that would occur here.  Adhering to the statutory definition of "energy use" in the preemption provision simply means that EPCA preempts state regulations concerning the quantity of energy that products are designed to use, which is consistent with EPCA's purposes and the regulatory scheme that Congress designed.  Def.'s Mot. at 14–15, 17–25, 34–37.  That approach will hardly "render" EPCA "unworkable," *Util. Air*, 573 U.S. at 320, because EPCA has operated since its inception based on that settled understanding, Def.'s Mot. at 17–21.

Even if Plaintiffs were correct that EPCA more broadly seeks to promote national uniformity in appliances (and they are not), applying the statutory definition in the preemption provision still serves that purpose by eliminating the state regulations that are most problematic for manufacturers: energy conservation standards or proxies.  While Plaintiffs may think that more preemption would better serve EPCA's purposes, Pls.' Opp'n at 9–10, their view is wrong and irrelevant because Congress chose how it wanted to further EPCA's purposes: by preempting regulations concerning "energy use" as Congress defines that term.  It is thus the Court's "function to give the statute the effect its language suggests, however modest that may be," *Digital Realty*, 583 U.S. at 166 (internal quotation marks and citation omitted), and "even when it could be argued that the line should have been drawn at a different point," *Carcieri v. Salazar*, 555 U.S. 379, 393 n.8 (2009) (internal quotation marks and citation omitted).  Indeed, "[n]o statute pursues a single policy at all costs."  *Advoc. Christ Med. Ctr. v. Kennedy*, 145 S. Ct. 1262, 1274 (2025) (internal quotation marks and citation omitted).

Plaintiffs nonetheless repeat a handful of reasons why the Court should disregard EPCA's definition of "energy use."  None meets the *Kirtz* standard.  None comports with binding precedent.  And none shows "clear and manifest" intent by Congress to grossly expand the scope

of the preemption provision. *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 346 (D.C. Cir. 2018) (internal quotation and citation marks omitted).

**First,** Plaintiffs again surmise that because two provisions of EPCA, 42 U.S.C. §§ 6292(b)(1)(B) and 6295(*l*)(1)(B), use "energy use" in a broader sense, "energy use" must also take that broader sense in the preemption provision. Pls.' Opp'n at 11, 13–14. The Supreme Court unanimously rejected this reasoning in *Kirtz*. That case was about whether the federal government was liable under the Fair Credit Reporting Act (FCRA), which grants a cause of action against "any person," defined to include the government. 601 U.S. at 45–46. The government argued that the statutory definition of "person" could not be applied in FCRA's cause-of-action provision because it could not be applied in FCRA's criminal-enforcement provision, as that would be absurd to subject the government to criminal prosecution. *Id.* at 61– 62. Nine Justices rejected that argument, explaining that, even if it would be absurd to apply the statutory definition in the criminal provision, "absurdity is not contagious: The power to correct for an absurdity 'in one portion of a statute' does not imply a 'license to distort other provisions of the statute.'" *Id.* at 62 (quoting *NLRB v. Health Care & Ret. Corp. of Am.*, 511 U.S. 571, 579 (1994)). Just because the statutory definition could not apply in certain provisions did not mean that it could not apply in the provision at issue. *Id.* at 62–63; *see also Mowrer*, 14 F.4th at 347.

The same rule applies here. Even if the statutory definition of "energy use" cannot apply in §§ 6292(b)(1)(B) and 6295(*l*)(1)(B), it "does not follow" that the definition cannot apply in the preemption provision. *Kirtz*, 601 U.S. at 62. Plaintiffs' reasoning begs the question: if the Court can ignore the statutory definition in the preemption provision just because it cannot be used in §§ 6292(b)(1)(B) and 6295(*l*)(1)(B), then "where *would* [the statutory] definition apply?" *Id.* Plaintiffs do not attempt to answer that question or address *Kirtz* at all, even though the District

raised that *Kirtz* foreclosed their argument. Def.'s Mot. at 26–27. By failing to address the District's argument, Plaintiffs concede that *Kirtz* defeats their request to abandon the statutory definition of "energy use." *Texas v. United States*, 798 F.3d 1108, 1114–16 (D.C. Cir. 2015).

*Kirtz* aside, Plaintiffs place too much reliance on §§ 6292(b)(1)(B) and 6295(*l*)(1)(B) because the context in which those provisions use the term "energy use" differs from the preemption provision's. Def.'s Mot. at 27–28. Plaintiffs acknowledge that § 6292(b)(1)(B) uses "energy use" as part of a phrase with its own statutory definition, but Plaintiffs say that "energy use" is used there in the capacious manner they favor. Pls.' Opp'n at 11–12. Plaintiffs miss the point: by using "energy use" as part of a *separately defined term*, EPCA signals that it is using "energy use" in a specialized way. Plaintiffs note that their other provision, § 6295(*l*)(1)(B), does not use that exact same separately defined phrase. *Id.* at 12–13. But the two phrases are similarly worded and operate similarly. So their similarity is further indication that they arise in the same context. And that context is far from the preemption provision, so their usage cannot change the meaning of energy use in the preemption provision. Finally, Plaintiffs dispute the importance of the contrasting use of the definite article in these provisions versus the preemption provision ("*the* energy use"), *id.*, but Plaintiffs ignore precedents explaining the importance of the definite article, Def.'s Mot. at 28.

**Second,** Plaintiffs argue that the Court should disregard the statutory definition of "energy use" because "energy use" is used with "concerning." Pls.' Opp'n at 14. But connecting terms like "concerning" merely denote a relationship between terms. *Dubin v. United States*, 599 U.S. 110, 119 (2023). They do not redefine or broaden the terms they connect. *Berkeley*, 89 F.4th at 1125 (Friedland, J., dissenting from the denial of rehearing en banc). To illustrate, in an opinion joined by then-Judge Alito, the Third Circuit rejected the

9

argument that "concerning" was license to abandon a statutory definition, holding that, when

"railroad" was statutorily defined as a *current* railroad, a claimant could not argue that "a

case . . . concerning a railroad" included cases involving *former* railroads.  *In re Pittsburgh &*

*Lake Erie Props., Inc.*, 290 F.3d 516, 519 (3d Cir. 2002).  In accord, the Supreme Court and

others consistently adhere to a term's statutory definition in preemption provisions even when

the term follows connecting words.[3]  Plaintiffs cite no authority to the contrary, and their only

case about "concerning," *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018), says

nothing about abandoning statutory definitions.

**Third,** Plaintiffs again argue that the building code exemption, 42 U.S.C. § 6297(f),

supports disregarding the statutory definition of "energy use" in the preemption provision.  Pls.'

Opp'n at 9–10, 14.  But Plaintiffs "agree" that the exemption is not incompatible with applying

the definition of "energy use" in the preemption provision.  *Id.* at 3; *see* Def.'s Mot. at 33.  Nor

do Plaintiffs dispute that *Dan's City*, 569 U.S. 251, refutes their reliance on the exemption.

Def.'s Mot. at 33.  In *Dan's City*, the preemption claimant tried to use an exemption from the

preemption provision to define the scope of preemption.  569 U.S. at 264.  The Supreme Court

unanimously rejected that argument, explaining that "[e]xceptions to a general rule, while

sometimes a helpful interpretive guide, do not in themselves delineate the scope of the rule."  *Id.*

So "exceptions to [a] general rule of preemption identify matters a State may regulate when it

would otherwise be precluded from doing so, but they do not control more than that."  *Id.*  So too

---

3  *E.g.*, *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91, 96 (1983) (adhering to statutory definition of "employee benefit plan" in the phrase "relate to any employee benefit plan"); *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261–62 (2013) (adhering to statutory definition of "transportation" in the phrase "with respect to the transportation of property"); *Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 460 (7th Cir. 2023) (adhering to statutory definition of "motor vehicles" in the phrase "with respect to motor vehicles"), *cert. denied*, 144 S. Ct. 564 (2024).

here.  The building code exemption exempts laws that are otherwise preempted, but it does not delineate what laws are preempted in the first place, nor does it provide license to abandon the statutory definition of energy use.  Another court reasoned similarly when recently rejecting the same argument in a challenge to New York State's fossil fuel prohibition.  *Mulhern Gas Co. v. Mosley* (*New York State*), No. 23-cv-1267, 2025 WL 2062194, at *14 (N.D.N.Y. July 23, 2025).

**Fourth,** Plaintiffs again argue that the waiver provision, 42 U.S.C. § 6297(d), indicates that the preemption provision covers more regulations than those concerning the quantity of energy that covered products are designed to use.  Pls.' Opp'n at 10.  Like the building code exemption, the waiver provision cannot rewrite the preemption provision.  *Dan's City*, 569 U.S. at 264.  The waiver provision instead outlines factors for DOE to consider when deciding whether to allow an *already preempted* regulation to go into effect.  But when, as here, a law is not preempted—because it does not concern the quantity of energy that products are designed to use—then the waiver provision is immaterial.  *New York State*, 2025 WL 2062194, at *15.

Instead of addressing the above, Plaintiffs offer a sleight-of-hand "gotcha" argument. The District explained that ECPA's waiver provision reflects that Congress did not want DOE to approve preempted "state standards" that would create the sort of regulatory patchwork that the preemption provision sought to avoid.  Def.'s Mot. at 36–37.  Plaintiffs selectively quote the District's brief to claim that the District argued that "Congress sought to prevent state *laws* that would 'prompt manufacturers to pull out of a state's market and thus result in the very patchwork economy that Congress sought to avoid.'"  Pls.' Opp'n at 1–2 (emphasis added) (quoting Def.'s Mot. at 36–37); *see id.* at 5–7.  Plaintiffs thus misconstrue the District to agree with them that EPCA preempts any state law that prompts a manufacturer to avoid doing business in one state. To the contrary, the District consistently explained that Congress was concerned with a

11

patchwork of state energy conservation standards, not any patchwork of state laws. That is why the District said—which Plaintiffs misleadingly leave off—that "Congress did not want DOE to approve state *standards*." Def.'s Mot. at 36 (emphasis added).

### 2. **"Point of Use"**

To quote Plaintiff National Association of Home Builders (NAHB) before this case, "point-of-use" is the technical "method" that manufacturers use when "measuring" energy use pursuant to EPCA. Def.'s Ex. 10 [30-12] at 1. Now, however, Plaintiffs argue that "point of use" means the place where a product is used. Pls.' Mem. in Supp. of Their Mot. for Summ. J. (Pls.' Mot.) [26] at 11. Plaintiffs had it right the first time. Although Plaintiffs invoke a "rule" that courts often give a term its ordinary meaning, Pls.' Opp'n at 14, Plaintiffs overlook an exception: When context indicates that a term has a specialized meaning, that meaning controls, and when a statute is addressing a technical, scientific, or industry subject, a specialized meaning is expected. *Van Buren v. United States*, 593 U.S. 374, 389 n.7 (2021); *Concert Inv., LLC v. SBA*, 100 F.4th 215, 222 (D.C. Cir. 2024) *Berkeley*, 89 F.4th at 1121 (Friedland, J.). To discern a term's specialized meaning, the Court looks to the term's usage in the specialized field. *Concert Inv.*, 100 F.4th at 222; *see Solar Energy Indus. Ass'n v. FERC*, --- F.4th ----, ----, No. 21-1126, 2025 WL 2599488, at *4 (D.C. Cir. Sept. 9, 2025) (agency had "better reading" when it relied on industry usage and prior agency interpretations versus party that relied on dictionaries).

The District's evidence showed that "point of use" has always been understood as a technical instruction in the relevant industry. Def.'s Mot. at 14. Plaintiffs say that the District only provided "the dissent in *Berkeley* and some agency regulations." Pls.' Opp'n at 14. This is not true. The District also provided two scientific reports addressing EPCA's point-of-use method and its history, prepared by energy experts at the request of DOE or Congress, with input from industry stakeholders. Def.'s Ex. 7 [30-9] at 1, 23–26, 33–37; Def.'s Ex. 8 [30-10] at iii–iv,

6–7, 13.[4]  Further, the District provided a Senate report reflecting that Congress and DOE have understood "point of use" as a method for measuring energy use.  S. Rep. No. 105-227, at 100 (1998).  Still further, the District provided regulatory submissions from industry stakeholders— including from *Plaintiffs*.  Def.'s Mot. at 29 n.6.  So, to be clear, Plaintiffs are telling the Court that "point of use" means something different from how Plaintiffs use the term outside this Court, and when the District noted this contradiction, Plaintiffs ignored it.

Plaintiffs further suggest that there is no evidence near EPCA's enactment of the specialized meaning of "point of use."  Pls.' Opp'n at 14.  This is not true, too.  In some of the first agency actions construing EPCA, DOE's predecessor used "point of use" to refer to a technical method for measuring site energy.  42 Fed. Reg. 20,012, 20,013 (Apr. 15, 1977); 42 Fed. Reg. 33,158, 33,159 (June 29, 1977).  And the "point of use" method was chosen because state regulators at the time had used other methods.  Def.'s Ex. 8 at 6, 9, 17; *Berkeley*, 89 F.4th at 1123 (Friedland, J.) (citing Energy Res. Conservation & Dev. Comm'n, *Energy Conservation Standards for Nonresidential Buildings* 5 (May 27, 1977)).  This is contemporaneous evidence of usage—far closer to EPCA's enactment than Plaintiffs' two dictionaries from the 2020's.

By failing to address this evidence, Plaintiffs concede that it establishes the "customary usage of the phrase in the industry," which in turn establishes the phrase's meaning in EPCA.  *Ass'n of Am. R.R. v. Costle*, 562 F.2d 1310, 1319 (D.C. Cir. 1977).  There is no requirement that specialized usage be proven by "scientific literature or technical dictionaries."  Pls.' Opp'n at 14; *see Concert Inv.*, 100 F.4th at 222 (relying on a college's career website to define an industry term).  Although, the two reports ignored by Plaintiffs qualify as the former.

---

[4]  One of these reports refutes Plaintiffs' main arguments that "energy use" in EPCA refers to actual energy use, and building codes that set energy consumption goals are preempted.  *See* Def.'s Ex. 8 at 4, 32–34; Pls.' Mot. at 10, 13.

Plaintiffs also dismiss DOE's longstanding interpretation of "point of use," suggesting that courts no longer defer to agencies. Pls.' Opp'n at 14 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–01 (2024)). But courts still rely on agencies' experience, judgment, and usage. *Loper Bright*, 603 U.S. at 394; *Bondi v. VanDerStok*, 145 S. Ct. 857, 874 (2025); *Solar Energy*, 2025 WL 2599488, at *5. Here, to understand how a term applies in the regulated industry, the Court must know how the regulator understands the term. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 254 (1994) (relying on regulators' interpretation of term in preemption provision); *Atlanta Channel, Inc. v. Solomon*, 583 F. Supp. 3d 174, 194 n.5 (D.D.C. 2022) (relying on agency usages not because they are "entitled to deference" but "because they are evidence of the common usage of the terms in the [regulated] industry").

Confirming that "point of use" has a specialized meaning is its lack of ordinary meaning when EPCA was enacted. A statutory term has an ordinary meaning when there is "evidence" from the time of enactment that "most people . . . would have understood" it the same way. *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). "Any definition of a word that is absent from many dictionaries . . . is hardly a common or ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 569 (2012). It is undisputed that dictionaries from EPCA's enactment and even years beyond did not define "point of use." *See* Def.'s Mot. at 30. As a result, "point of use" lacked an ordinary meaning that could compete with its EPCA-specific meaning.

### 3. <u>"Concerning"</u>

In the preemption provision, "concerning" is a connecting term that is most naturally read to mean "about" such that EPCA preempts only a "regulation" about "the . . . energy use of" covered products, 42 U.S.C. § 6297(c). Def.'s Mot. at 11, 30–32. Plaintiffs nonetheless reason that because one case (*Lamar*) and some dictionaries say that "concerning" *can* mean "relating to," and because a few other cases read "relating to" broadly in different statutes, EPCA's

preemption provision must be given a broad reach (but where it stops, Plaintiffs will not say).

Pls.' Opp'n at 16–19. Plaintiffs' faulty syllogism fares no better a second time around because Plaintiffs still misunderstand statutory interpretation.

"[C]onstruing statutory language is not merely an exercise in ascertaining the outer limits of a word's definitional possibilities." *Sackett v. EPA*, 598 U.S. 651, 676 (2023). Rather, the Court's "task is to ascertain what the term means in the specific context in question." *City & Cnty. of S.F. v. EPA*, 145 S. Ct. 704, 715 (2025). That is especially true for terms "that govern conceptual relationships" because their meaning "inherently depend[s] on their surrounding context." *United States v. Miller*, 145 S. Ct. 839, 853 (2025). And so courts—in cases ignored by Plaintiffs—routinely give connecting terms, like "concerning" or "relating to," a narrower meaning with discernible limits based on context and other considerations. Def.'s Mot. at 11, 31–32. By failing to address those cases or evidence of the narrower usage of "concerning," Plaintiffs concede that the term can have a narrower meaning.

Accordingly, Plaintiffs cannot just "cit[e] dictionary definitions and cases that adopt capacious readings of similar phrases." *Miller*, 145 S. Ct. at 852.[5] Such sources do not demonstrate that "concerning" "could mean *only*" "relating to" in the specific context of EPCA's preemption provision. *Validus Reins., Ltd. v. United States*, 786 F.3d 1039, 1044 (D.C. Cir. 2015). Plaintiffs must—but do not—follow through to the "next step" and explain why the specific context in which "concerning" appears in EPCA indicates that "concerning" indeed

---

[5] For the first time, Plaintiffs address *Miller*, which rejected their argument that *Lamar* conclusively established the sole meanings of the terms it discussed. Plaintiffs say *Miller* is distinguishable because it involved sovereign immunity. Pls.' Opp'n at 16–17. But *Miller* relied on "fundamental" "interpretive principles." 145 S. Ct. at 853 (internal quotation marks and citation omitted). Those principles are not limited to sovereign immunity, as evinced by their application in *Dubin*, 599 U.S. at 116–20, a case that rejects a broad reading of "in relation to" and that Plaintiffs never address.

means "relating to" and has a broadening effect. *Dubin*, 599 U.S. at 120. To the contrary, the surrounding language, structure, history, and purposes of EPCA do not evince intent by Congress—certainly not "clear and manifest" intent—to expand the scope of preemption beyond regulations about energy use, as defined by EPCA. *Sickle*, 884 F.3d at 346 (internal quotation and citation marks omitted).

Two contextual considerations bear emphasis—both of which Plaintiffs ignore almost entirely. First, the preemption provision also uses "with respect to," and that phrase "massively limits the scope of preemption" in a provision using "related to." *Dan's City*, 569 U.S. at 261 (internal quotation marks omitted); *see* Def.'s Mot. at 13–14. Second, in the preemption context, "concerning" has not been given the same distinctly broad preemptive meaning as "relating to," and the fact that Congress chose "relating to" elsewhere in EPCA confirms that it did not intend "concerning" to mean "relating to" in the preemption provision. Def.'s Mot. at 30–32; *see Consumer Data Indus. Ass'n v. Frey*, 26 F.4th 1, 7–8 (1st Cir. 2022) (concluding that Congress's use of "with respect to" in a preemption provision showed it did not intend the provision to extend as broadly as provisions using "relating to"). That is true even if EPCA's other preemption provision post-dated the provision here, *contra* Pls.' Opp'n at 18, because courts presume Congress acts intentionally when using language in one provision but not another even when the provisions "were enacted at different times," *Sinclair Wyo. Ref. Co. v. EPA*, 114 F.4th 693, 709 (D.C. Cir. 2024) (per curiam).

Contrary to Plaintiffs' suggestion, then, the Court cannot just assume that Congress meant "relating to" when it used "concerning" and intended to incorporate certain prior judicial constructions of "relating to." The Court can only presume that Congress incorporates prior judicial constructions of a term when Congress uses an "identical" term. *Armstrong v.*

16

*Exceptional Child Ctr., Inc.*, 575 U.S. 320, 330 (2015). Further, the Supreme Court has concluded that Congress meant "relating to" to have a broad meaning when the statute's history explicitly reflects that Congress intended to adopt the phrase's broad interpretation. *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008). There is nothing like that in EPCA's history. It is thus "doubtful" that Congress silently incorporated "relating to" jurisprudence by using a different word when Congress could have achieved that result in a "more straightforward way" and just used "relating to." *Azar v. Allina Health Servs.*, 587 U.S. 566, 577 (2019).

Even if "concerning" meant "relating to," the preemption provision would still not reach the fossil fuel prohibition. The phrase "'related to' does not mean the sky is the limit." *Dan's City*, 569 U.S. at 260. Rather, the Supreme Court has provided standards for applying "related to" preemption statutes: a state regulation "relates to" a subject "if it has a connection with or reference to" that subject. *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86 (2020).

"To determine whether a state law has an impermissible connection with [energy use], this Court considers [EPCA's] objectives as a guide." *Id.* at 86 (internal quotation marks and citation omitted). EPCA's objectives were to set national energy conservation standards. The fossil fuel prohibition would not frustrate those objectives because it does not set a competing energy conservation standard, even indirectly, and it "neither require[s] anything of manufacturers nor constrain[s] their activities." *Ass'n of Contracting Plumbers of City of N.Y., Inc. v. City of New York* (*New York City*), No. 23-cv-11292, 2025 WL 843619, at *7 (S.D.N.Y. Mar. 18, 2025), *appeal docketed*, No. 25-977 (2d Cir. Apr. 21, 2025); *see* Def.'s Mot. at 21–22; Argument § III, *infra*. Nothing about the fossil fuel prohibition prevents manufacturers from complying with federal energy conservation standards or other EPCA requirements.

17

Nor does the fossil fuel prohibition refer to energy use, as defined by EPCA. "A law refers to [energy use] if it 'acts immediately and exclusively upon [energy use] or where the existence of [energy use] is essential to the law's operation.'" *Rutledge*, 592 U.S. at 88 (internal quotation marks and citation omitted). The prohibition, however, "does not draw any distinction between products based on their . . . energy use." *New York City*, 2025 WL 843619, at *6. All said then, the fossil fuel prohibition "does not 'relate to' the subject matter of EPCA any more than it 'concern[s]' it." *Id.*; *see also New York State*, 2025 WL 2062194, at *14; *Berkeley*, 89 F.4th at 1125–26 (Friedland, J.).

Plaintiffs never apply these standards, let alone identify any workable limit for their view of "concerning." *See* Pls.' Opp'n at 18–19. Far from offering a limiting principle, Plaintiffs acknowledge that, under their "broad" interpretation, "delineating the outer bounds" of EPCA preemption "will not be an easy task." *Id.* at 19. They simply say that the Court can avoid those difficult questions in this case. *See id.* at 18–19. But the way to avoid such questions is by rejecting Plaintiffs' limitless preemption theory, which is the *cause* of the problem, not the *cure*. Indeed, Plaintiffs' effort to swap Congress's term "concerning" with their own preferred phrase "relating to" is not only atextual, but it also provides "an illusory test" that is "doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else." *Cal. Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring); *see id.* (lamenting the lack of "clarity" in the Supreme Court's early construction of ERISA's "relate to" preemption provision and explaining how the Court later found the need to lay down more concrete standards). Plaintiffs thus urge precisely the kind of "unconstrained expansion" of the preemption provision that the Court must avoid. *Miller*, 145 S.

Ct. at 853 (internal quotation marks and citation omitted); *see Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016) (emphasizing "the need for workable standards" for preemption).

**B.     Structure**

Structural cues confirm that EPCA preempts regulations concerning the quantity of energy that covered products are designed to use. Def.'s Mot. at 15–17. Plaintiffs hardly address them. Plaintiffs do not address—and thus concede—that EPCA frequently refers back to "standards" as the preempted domain, *id.* at 17, or that the waiver provision reflects a concern with state regulations that would require a redesign of the product, *id.* at 16. Plaintiffs' responses to the remaining structural points fail to engage with binding precedent.

First, Plaintiffs eschew any consideration of the statute's title, Pls.' Opp'n at 11 n.2, but titles "supply cues as to what Congress intended," *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380 (2018) (internal quotation marks and citation omitted). And when a provision uses context-sensitive connecting words (like "concerning") those terms "*must* be construed in light of the terms surrounding them, and the title Congress chose is among those terms." *Dubin*, 599 U.S. at 121 (emphasis added) (cleaned up). Here, the preemption provision's title "'point[s] to a narrow[ ] reading' that is 'centered around'" energy conservation standards, "not just any" state energy law. *Pileggi*, 146 F.4th at 1232 (quoting *Dubin*, 599 U.S. at 120). A major problem with Plaintiffs' interpretation, then, is that they cannot explain why Congress would title the preemption provision "General rule of preemption for energy conservation standards," 42 U.S.C. 6297(c), but then preempt far more than energy conservation standards. All the while, the Supreme Court and D.C. Circuit have rejected interpretations of statutes, like Plaintiffs', that extend far past the title. *E.g.*, *Dubin*, 599 U.S. at 120–24; *Pileggi*, 146 F.4th at 1232–33.

Second, Plaintiffs ignore that EPCA's preemption provision and energy conservation standard provisions are "interlocking" and use "conspicuously similar language," which

"provides a strong indication that they are alike in scope and effect." Def.'s Mot. at 15 (internal quotation marks omitted) (quoting *Rawat v. C.I.R.*, 108 F.4th 891, 895 (D.C. Cir. 2024)). Instead, Plaintiffs accuse the District of arguing that "energy conservation standard" and "regulation concerning energy use" are one in the same. Pls.' Opp'n at 10–11. The District never argued that. Rather, an energy conservation standard is the chief example of a regulation concerning energy use because it sets the maximum quantity of energy that a covered product is designed to use. Def.'s Mot. at 14–15. But the District never argued that energy conservation standards are the *only* regulations concerning energy use. For example, the District explained that building codes can concern energy use. *Id.* at 33; *see also* Argument § III, *infra*. Plaintiffs thus attack a strawman when they try to find errors in an interpretation that covers only energy conservation standards. *See* Pls.' Opp'n at 10–11.

In their misfocus, Plaintiffs fail to grapple with a serious incongruity with their interpretation. According to Plaintiffs, once DOE promulgates an energy conservation standard—which only regulates a covered product's "energy use" as defined by EPCA—states cannot enact a far broader swath of regulations, those concerning "energy" in the broadest, colloquial sense. Under that interpretation of EPCA, there is a serious mismatch between DOE's regulatory authority and its preemptive authority.

That mismatch poses constitutional concerns. Def.'s Mot. at 16. Plaintiffs claim that the District did not "identify what 'constitutional principles' are at play." Pls.' Opp'n at 24. But as the District explained, Def.'s Mot. at 16, federal agencies lack the power to regulate and preempt without congressional authorization, *Mozilla Corp. v. FCC*, 940 F.3d 1, 74–75 (D.C. Cir. 2019) (per curiam). And an agency acting without power raises both "[a] separation of powers and [a] statutory interpretation issue." *Marin Audubon Soc'y v. FAA*, 121 F.4th 902, 912 (D.C. Cir.

2024) (internal quotation marks and citation omitted). But under Plaintiffs' interpretation, DOE's energy conservation standards would be preempting state laws that Congress has not given DOE the power to enact itself.

Even if Plaintiffs were right that the "problem of an agency exceeding its statutory authority is a statutory matter," Pls.' Opp'n at 24, that distinction does not help them. The fact that EPCA keys DOE's authority to energy conservation standards is another textual and structural indication that the Court should interpret the preemption provision in accord with the agency's regulatory authority. Indeed, the Supreme Court has declined to adopt a "broad reading" of an agency's preemptive power that would exceed the agency's regulatory power. *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 357 (1986). This Court should do the same.

### C.      Context

EPCA's preemption provision exists in the context of widespread federal support for state laws that Plaintiffs' interpretation would preempt. Def.'s Mot. at 22–25, 35–36. Plaintiffs first respond that these federal initiatives are "voluntary." Pls.' Opp'n at 22–23. That makes no difference. Congress need only show support for or awareness of state policies for a preemption claim to lose force, as explained in precedent that Plaintiffs ignore. Def.'s Mot. at 24. In fact, federal initiatives towards states must be voluntary because the Constitution prohibits the federal government from compelling states to do anything. *Murphy v. NCAA*, 584 U.S. 453, 470 (2018).

Anyway, this argument does not work for the part of EPCA mandating that federal buildings transition away from fossil fuels. Def.'s Mot. at 25. Plaintiffs respond that "federal standards" do not pose the same "preemption issues." Pls.' Opp'n at 23 n.7. Plaintiffs miss the point. Congress could not have enacted a national policy ensuring that consumers can use gas-powered covered products (as Plaintiffs contend, *e.g.*, *id.* at 9; Pls.' Mot. at 20) if any person in new federal buildings across the country will soon not be able to use gas-powered products.

21

Likewise, if the Clean Buildings Act will be as disastrous for national energy policy and manufacturers as Plaintiffs say, *see, e.g.*, Pls.' Opp'n at 7, then surely a "gas ban" that applies nationally in federal buildings will be far worse.

Plaintiffs also argue that federal laws identified by the District do not specifically support "ban[s] on gas appliances." *Id.* at 23. But Plaintiffs' position would preempt much more than bans on gas appliances. Plaintiffs interpret EPCA to preempt any state regulation "merely" touching upon appliances and energy, in the broadest sense. Pls.' Mot. at 12. They do not and cannot dispute that federal laws identified by the District support state policies that would be preempted by their interpretation. And that just makes no sense.

**D.      History**

Plaintiffs repeat their mistaken history of EPCA but do not address the District's historical arguments, including that the history shows congressional concern over a patchwork of state *standards*, not any state regulation of appliances; DOE has long interpreted the preemption provision narrowly; and Congress has acquiesced in DOE's interpretation. *See* Pls.' Opp'n at 5–7; Def.'s Mot. at 17–21, 34–36. Plaintiffs thus concede that their interpretation "would upend decades of practice and precedents." *Miller*, 145 S. Ct. at 851.

Plaintiffs also give no good answer why, if EPCA clearly preempted any regulation touching appliances and energy, no one noticed until *Berkeley* decades later. Plaintiffs shrug and say they cannot explain litigation trends, and "gas bans" are "relatively new." Pls.' Opp'n at 22. But if EPCA's preemption provision meant what Plaintiffs say it does, then that would be recognized in every EPCA preemption case or every time DOE addressed preemption. Yet, for decades, courts and DOE construed the provision more narrowly. *E.g.*, *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 500 (9th Cir. 2005); 47 Fed. Reg. 14,424, 14,456 (Apr. 2, 1982); 75 Fed. Reg. 59,470, 59,530 (Sept. 27,

2010).  And if Plaintiffs' interpretation of EPCA was only discovered once "gas bans" became popular, then it seems that such an interpretation was invented by industry plaintiffs to nullify policies they could not defeat at the ballot box.

### E.      Purposes

As this Court recently observed, "Congress enacted the EPCA . . . to promote energy security and establish energy conservation standards."  *DOE v. Saniborain LLC*, No. 24-cv-2795, 2025 WL 2159185, at *1 (D.D.C. July 29, 2025) (Reyes, J.).  Plaintiffs disagree.  To them, EPCA is a weapon of mass deregulation intended to increasingly "smother[ ]" states' longstanding regulatory authority.  Pls.' Opp'n at 7.  But "any '[e]vidence of pre-emptive purpose,' whether express or implied, must . . . be 'sought in the text and structure of the statute.'"  *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 778 (2019) (Gorsuch, J., joined by Thomas & Kavanaugh, JJ.) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).  And no statute can have the purpose to intrude on an area of traditional state regulation unless that purpose is clearly expressed in its text.  *Bond v. United States*, 572 U.S. 844, 862–63 (2014); *GenBioPro, Inc. v. Raynes*, 144 F.4th 258, 277 (4th Cir. 2025).

Yet, Plaintiffs do not point to any clear expression of sweeping deregulatory purposes. *See* Pls.' Opp'n at 5–7.  The best source for a statute's purposes are its purposes and congressional findings sections.  *E.g.*, *Little Sisters of the Poor v. Pennsylvania*, 591 U.S. 657, 680 (2020); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 519 (1992).  Those sections in EPCA and its amendments do not indicate that Congress sought to revolutionize the federal-state relationship when it comes to appliances or gas.  Instead, EPCA expressed a purpose of reducing demand for methane gas.  EPCA § 2, Pub. L. No. 94-163, 89 Stat. 871, 874 (1975).  To that end, EPCA and interrelated laws proclaim support for state regulation in areas that Plaintiffs say are the exclusive province of the federal government.  Def.'s Mot. at 22–24.

23

Because EPCA's express purposes are incompatible with Plaintiffs' claim, Plaintiffs are left to make the strained inference that by regulating appliances' energy performance, Congress sought to prevent all state regulation of appliances. Pls.' Opp'n at 5–7. But Plaintiffs do not acknowledge—and thus concede—that the Supreme Court rejected this reasoning in *Virginia Uranium*. Def.'s Mot. at 35; *see GenBioPro*, 144 F.4th at 273 (relying on *Virginia Uranium* to reject claim that by regulating drug safety, federal law preempted state bans of regulated drugs). Indeed, revolutionizing federal-state relations seems like an elephant hidden in the mousehole of regulating one aspect of appliances, but Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001); *see also Va. Uranium*, 587 U.S. at 771 (Gorsuch, J.). Plaintiffs also rely on EPCA's "legislative and statutory history" to support their version of EPCA's purposes. Pls.' Opp'n at 5. But the Supreme Court has rejected reliance on such history to divine sweeping preemptive purposes. *Va. Uranium*, 587 U.S. at 767, 778–79 (Gorsuch, J.); *Kansas v. Garcia*, 589 U.S. 191, 202 (2020). Anyway, Plaintiffs fail to address the flaws in their revisionist history or that their portrayal of an all-powerful DOE contradicts NAHB's position before the D.C. Circuit. Def.'s Mot. at 17–21, 34–37.

In more revisionist history, Plaintiffs now claim that neither they nor *Berkeley* read EPCA to create a consumer right to use appliances. Pls.' Opp'n at 24–25. Elsewhere, however, Plaintiffs argue—with quotation from *Berkeley*—that EPCA protects the "end-user's ability to *use* installed covered products." *Id.* at 9 (internal quotation marks omitted) (quoting *Berkeley*, 89 F.4th at 1102). According to Plaintiffs, EPCA thus "ensured that States and localities could not prevent consumers from using covered products." *Id.* at 20 (internal quotation marks omitted) (quoting *Berkeley*, 89 F.4th at 1103). This is a consumer right to use covered products.

24

Plaintiffs nonetheless take issue with case law stressing the difficulty in showing that Congress created a statutory right, saying this case law is about inferring a cause of action and is therefore "irrelevant." *Id.* at 24–25. That is incorrect. The *Gonzaga* test is used to determine whether a statute confers a right. *Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2229 (2025) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002)). Moreover, Plaintiffs miss the point of the District's invocation of *Gonzaga*: It reflects that the Supreme Court has long been reluctant to see rights in statutes. *Medina*, 145 S. Ct. at 2239. That reluctance carries over to preemption cases because new federal rights mean "a significant intrusion into a state's traditional authority." *GenBioPro*, 144 F.4th at 276; *see id.* (rejecting argument that, by authorizing the FDA to establish safety rules for administering drugs, Congress "create[d] a right to utilize any particular high-risk drug"). So courts demand the clearest of language when recognizing rights, *id.*, yet Plaintiffs have pointed to none.

### F.      Consequences

Plaintiffs do not dispute that their interpretation would preempt a startling swath of laws, cause climate catastrophe, and result in a regulatory void. *See* Def.'s Mot. at 37–38. Instead, Plaintiffs just say that the Court need only address whether EPCA preempts the fossil fuel prohibition. Pls.' Opp'n at 19. But the Court's "task is to 'identify the domain expressly pre-empted'" by EPCA. *Dan's City*, 569 U.S. at 259 (quoting *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001)). To Plaintiffs, EPCA's preempted domain reaches any law that merely relates to appliances' energy use, in the broadest sense. If that is right, then that domain covers laws from critical climate policies to fire codes—a result the Court avoids. *New York City*, 2025 WL 843619, at *6. That interpretation applies in every case because a statute is not "a chameleon," *Clark v. Martinez*, 543 U.S. 371, 382 (2005), and "the meaning of words in a statute cannot change with the statute's application," *United States v. Santos*, 553 U.S. 507, 522 (2008)

(plurality).  Accordingly, the Supreme Court has rejected similar attempts by parties or courts to fend off the consequences of an expansive interpretation by suggesting that the Court need only decide how the interpretation applies in the case at hand.  *Kansas*, 589 U.S. at 206; *Bond*, 572 U.S. at 862.  For those reasons, *Berkeley* erred when it adopted a broad interpretation of EPCA but then tried to cabin its holding to Berkeley's law.  89 F.4th at 1103.

G.      Case Law

When the District filed its Motion, thirteen jurists had recently endorsed the District's interpretation of EPCA—compared to only two who had fully accepted Plaintiffs'.  Def.'s Mot. at 39–40.  Since then, another judge, Judge Suddaby in *New York State*, joined that lopsided supermajority, rejected Plaintiffs'/*Berkeley*'s interpretation as "simply not . . . logical," and agreed with Judge Friedland's and Judge Abrams' "more reasoned analysis."  2025 WL 2062194, at *14.  Judge Suddaby now makes fourteen judges against Plaintiffs.

Plaintiffs say they cannot understand "the need to start counting noses."  Pls.' Opp'n at 21.  But the reasons are simple.  *Every* judge thus far to address the *Berkeley* panel opinion has concluded that it was wrong.  Such views are critical for this Court to consider when deciding whether to follow *Berkeley* because "[t]here is no room in the federal system of review for rote acceptance of the decision of a court outside the chain of direct review."  *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (Ginsburg, R.B., J.) (cleaned up), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989).  Yet, rote acceptance of *Berkeley* is just what Plaintiffs advocate.  The District identified a list of errors that *Berkeley* made and precedents that bind this Court in a way that *Berkeley* does not.  Def.'s Mot. at 38–40.  Plaintiffs do not defend *Berkeley* against any of those errors, and Plaintiffs do not address any of the precedents identified by the District except *Miller*.  *See* note 5, *supra*.  Instead, Plaintiffs say that the *Berkeley* opinions "can speak for themselves."  Pls.' Opp'n at 21.  But the problem with

26

the panel opinion is that it does not speak to Judge Friedland's opinion; the panel never amended its opinion to address any of Judge Friedland's points; and no panel member—or any Ninth Circuit judge for that matter—wrote a statement concurring in the denial of rehearing.  In short, the interpretation pushed by the panel and Plaintiffs is one that neither will defend.

Rather than engage with competing views, Plaintiffs argue that *Berkeley* is another circuit's law "from which the D.C. Circuit would be reluctant to depart." *Id.*  But given the widespread disagreement with *Berkeley*, a circuit split seems inevitable.  So the D.C. Circuit will not be creating a circuit split but picking a side.  Besides, the D.C. Circuit will split with another circuit when, for example, another circuit fails to apply a statutory definition.  *Mowrer*, 14 F.4th at 346–47; *see Jazz Pharms., Inc. v. Kennedy*, 141 F.4th 254, 261 (D.C. Cir. 2025) (splitting with a circuit that "brushe[d] past" the definition of a key term).  That is what *Berkeley* did—among many other errors that Plaintiffs invite this Court to make.

**H.**     **<u>Presumption Against Preemption</u>**

All the above ordinary tools of statutory interpretation show that the District's interpretation is correct.  But at the very least, the District's interpretation is plausible, as evinced by its acceptance by more than 80% of judges to address "gas bans" and EPCA.  When a preemption provision "is susceptible of" a "plausible reading" that "disfavors pre-emption," the presumption against preemption counsels that the Court accept that reading.  *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008) (internal quotation marks and citation omitted).

Although the Supreme Court and D.C. Circuit have recognized the presumption for decades, *e.g.*, *id.*; *Bond*, 572 U.S. at 858; *Geier v. Am. Honda Motor Co.*, 166 F.3d 1236, 1237 (D.C. Cir. 1999), *aff'd*, 529 U.S. 861 (2000), Plaintiffs argue that the Supreme Court abandoned the presumption in *Puerto Rico v. Franklin California Tax-Free Trust*, 579 U.S. 115 (2016), Pls.' Opp'n at 20.  But the determination of whether Supreme Court precedent abrogates circuit

precedent is a determination for the D.C. Circuit to make. *E.g.*, *Campaign Legal Ctr. v. Iowa Values*, 691 F. Supp. 3d 94, 103 (D.D.C. 2023). Thus, district courts in this circuit uniformly continue to apply the presumption—in cases that Plaintiffs ignore. Def.'s Mot. at 9.

Even were this Court to take up the determination itself, Plaintiffs make no attempt to shoulder their "substantial burden" to meet the standard for abandoning precedent. *Saad v. SEC*, 980 F.3d 103, 107 (D.C. Cir. 2020) (internal quotation marks and citation omitted). A Supreme Court decision must "clearly disavow[ ] or eviscerate[ ]" precedent. *Bahlul v. United States*, 77 F.4th 918, 928 (D.C. Cir. 2023) (internal quotation marks and citation omitted), *cert. denied*, 145 S. Ct. 350 (2024). *Puerto Rico* does not meet that standard. First, *Puerto Rico* said nothing about prior cases applying the presumption, and "the [Supreme] Court does not overturn or limit its prior holdings through silence or implication." *Herron v. Fannie Mae*, 861 F.3d 160, 168 (D.C. Cir. 2017). Second, post-*Puerto Rico*, the D.C. Circuit reaffirmed the presumption. *Sickle*, 884 F.3d at 346. Plaintiffs quibble with whether the D.C. Circuit "applied" the presumption, Pls.' Opp'n at 20, but Plaintiffs cannot deny that the Circuit included the presumption when stating the legal standards applicable in a preemption challenge. Third, the circuit split on the continuing viability of the presumption shows that questions remain about *Puerto Rico*'s effect, and thus it did not clearly dictate a departure from circuit precedent applying the presumption. *Bahlul*, 77 F.4th at 926; *Brookens v. Acosta*, 297 F. Supp. 3d 40, 48 (D.D.C. 2018), *aff'd sub nom. Brookens v. DOL*, No. 18-5129, 2018 WL 5118489 (D.C. Cir. Sept. 19, 2018); *see Berkeley*, 89 F.4th at 1110–12 (O'Scannlain, J., concurring).[6] Last, *Puerto*

---

[6]     Plaintiffs mistakenly claim that only the Third Circuit continues to apply the presumption. Pls.' Opp'n at 21 n.5. The presumption also still applies in the Fourth Circuit and many state supreme courts. *E.g.*, *GenBioPro*, 144 F.4th at 270–71; *Happel v. Guilford Cnty. Bd. of Educ.*, 913 S.E.2d 174, 189 n.8 (N.C. 2025); *Marsh v. Mass. Coastal R.R. LLC*, 214 N.E.3d 388, 398 (Mass. 2023), *cert. denied*, 144 S. Ct. 2519 (2024).

*Rico* is distinguishable because it involved bankruptcy, an area not within states' historic police powers, while the presumption continues to apply in cases (like this one) involving historic police powers. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 771 n.9 (3d Cir. 2018).[7]

### III. EPCA Does Not Preempt the Fossil Fuel Prohibition.

Perhaps sensing that their interpretation has insurmountable flaws, Plaintiffs spend the first part of their brief arguing that the fossil fuel prohibition is preempted even under the District's correct interpretation because the prohibition supposedly "sets" an energy conservation "standard of zero for gas appliances." Pls.' Opp'n at 1; *see also id.* at 3–5, 15.[8]

Plaintiffs misunderstand energy conservation standards. An energy conservation standard is "a performance standard which prescribes . . . a maximum quantity of energy use . . . for a covered product, determined in accordance with test procedures" that "measure . . . energy use . . . during a representative average use cycle or period of use, as determined by [DOE]." 42 U.S.C. §§ 6291(6), 6293(b)(3). And a "performance standard" is a criterion for a product's functional capabilities that manufacturers meet before their products enter the market.[9] Accordingly, an "energy conservation standard of zero" would be a law that

---

[7] Plaintiffs do not deny that the Clean Buildings Act falls within the District's police powers but argue that there is "no police-power . . . exception to federal preemption." Pls.' Opp'n at 25. Plaintiffs fail to recognize that the presumption applies in cases involving police powers. *Sickle*, 884 F.3d at 346.

[8] In a footnote, Plaintiffs argue that the fossil fuel prohibition also concerns the "energy efficiency" of covered products. Pls.' Opp'n at 15 n.4. This argument is forfeited several times over because Plaintiffs did not adequately develop it in their opening brief or Opposition. *N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007); *Georgia v. DOJ*, --- F.4th ----, ----, No. 23-5083, 2025 WL 2314892, at *11 (D.C. Cir. Aug. 12, 2025). If the Court excuses the forfeiture (and it should not), Plaintiffs' argument fails because the fossil fuel prohibition does not act as a performance standard for energy efficiency.

[9] *See Performance*, *The American Heritage Dictionary of the English Language* 974 (1970) ("[t]he way in which . . . something functions" (def. 3)); *Performance*, *Oxford English*

says manufacturers must design a product to typically consume 0 kwh per year under DOE test conditions before the product can enter the market. But the fossil fuel prohibition does nothing of the sort. It does not apply to manufacturers; it does not mention covered products or "energy use" performance metrics, much less set standards for such products' capabilities and functions; and it does not depend on DOE test procedures for compliance. Indeed, as Plaintiffs admit, the prohibition does "not speak in the language of kilowatt-hours . . . or any other technical 'energy use' measurement." Pls.' Opp'n at 4. The fossil fuel prohibition thus lacks the defining components of an energy conservation standard, and Plaintiffs' contrary arguments continue to mistake *actual* use with "energy use" as defined by EPCA.

Moreover, Plaintiffs' "standard of zero" argument defies common sense. Lots of regulations ban gas appliances or restrict when and where they can be used. Br. of Amici Curiae States [112] at 1, 5–11, *Berkeley*, No. 21-16278 (9th Cir. June 12, 2023). For example, one cannot use gas appliances on the Metro or in Metro stations. *See* D.C. Code § 35-251(b)(6) (prohibiting "any flammable or combustible liquids"). No reasonable person would say that WMATA has set a performance standard of "zero energy" for gas appliances. The same is true of the fossil fuel prohibition. Yet, according to Plaintiffs, EPCA preempts any state law that purportedly "imposes a zero-gas-energy-use standard." Pls.' Opp'n at 1. That makes no sense, and it turns EPCA's targeted preemption provision into a blunderbuss mandate that states tolerate gas-powered appliances anytime, anywhere. But the fact that federal law contemplates

_____

*Dictionary* (2d ed. 1989) (accessed online) ("the capabilities of a machine or device" (def. 2(a))); *Standard*, *American Heritage*, *supra*, at 1256 ("[a]n acknowledged measure of comparison for quantitative or qualitative value; criterion; norm" (def. 2(a))); *Zero Zone, Inc. v. DOE*, 832 F.3d 654, 666 (7th Cir. 2016) (manufacturers "use different design paths in order to attain the performance levels required" by an energy conservation standard (internal quotation marks omitted) (quoting 79 Fed. Reg. 17,726, 17,750 (Mar. 28, 2014))).

the existence of certain activities does not invariably bar states from prohibiting such activities altogether. *Va. Uranium*, 587 U.S. at 767–80 (Gorsuch, J.); *id.* at 793 (Ginsburg, J.).

Nor does the fossil fuel prohibition "impose performance standards by proxy." *New York City*, 2025 WL 843619, at *7. A "backdoor energy conservation standard," Pls.' Opp'n at 3, would be a law that does not directly impose a performance standard on manufacturers but still regulates based on "energy use" as defined by EPCA. For example, as DOE explained but Plaintiffs ignore, building codes may indirectly set energy conservation standards when they prohibit installation of appliances "with less than a certain efficiency," *i.e.*, energy use. 47 Fed. Reg. 57,198, 57,215 (Dec. 22, 1982). But a prohibition on installing covered products at all in new buildings would *not* be preempted. *Id.* The difference between the two is that the latter "does not draw any distinction between products based on their . . . energy use as manufactured." *New York City*, 2025 WL 843619, at *6. In other words, even a proxy must still reference "energy use" as defined by EPCA, and the fossil fuel prohibition does not.

Besides erroneously claiming that the fossil fuel prohibition sets an energy conservation standard, Plaintiffs make appeals to national uniformity for manufacturers. Pls.' Opp'n at 1–2, 5–7. But a textualist interpretation of EPCA reveals that Congress was concerned with ensuring that manufacturers "remain subject to a single, nationally uniform set of energy conservation standards"—not that manufacturers would be insulated from any state regulation or shifts in demand. *New York City*, 2025 WL 843619, at *7. The text controls, so a preemption plaintiff cannot succeed by demanding national uniformity when Congress delimited the scope of preemption. *Kansas*, 589 U.S. at 202; *Va. Uranium*, 587 U.S. at 767, 772 (Gorsuch, J.); *see Lorillard*, 533 U.S. at 551 (each term in a preemption provision "limits the universe of state action pre-empted" (cleaned up)). Such appeals are policy arguments. *DCC Propane, LLC v.*

31

*KMT Enters., Inc.*, 147 F.4th 171, 181 (2d Cir. 2025).  No matter how "serious," "they cannot overcome the statutory text and structure."  *Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1031 (2025).  Nonetheless, Plaintiffs may raise their complaints through the democratic process, which provides the proper "corrective."  *GenBioPro*, 144 F.4th at 271.

In any event, Plaintiffs' fanciful claims that the fossil fuel prohibition will destroy national appliance production are unavailing.  First, the District has not "ban[ned] gas appliances within its borders," Pls.' Opp'n at 7, because the Act only applies to (1) new construction of or substantial improvements to (2) a subset of buildings, Def.'s Mot. at 5.  Second, Plaintiffs are not manufacturer associations, and they cannot rely on complaints on behalf of third parties or hypothetical situations not before the Court.  *Metro. Wash. Chapter, Associated Builders & Contractors, Inc. v. District of Columbia*, 62 F.4th 567, 573 (D.C. Cir. 2023); *Am. Fed'n of Gov't Emps., AFL-CIO v. United States*, 330 F.3d 513, 518 (D.C. Cir. 2003); *Sprint Corp. v. FCC*, --- F.4th ----, ----, No. 24-1224, 2025 WL 2371009, at *7 (D.C. Cir. Aug. 15, 2025).  Third, Plaintiffs provide no evidence to support their assertions, which is required at this stage.  *United States v. Dynamic Visions Inc.*, 971 F.3d 330, 337 (D.C. Cir. 2020).  All the while, Plaintiffs admit that states, localities, and the federal government have enacted similar laws.  Pls.' Opp'n at 7, 23 n.7.  If such laws truly harmed manufacturers' production as Plaintiffs say, there would be available evidence of that, and moreover, the manufacturers would have sued.

Worse still, evidence presented by Plaintiffs in a different proceeding contradicts their assertions here.  Plaintiff Washington Gas just released a forecast for gas demand in the District.  Def.'s Ex. 15.[10]  "[A]ssum[ing]" that the Clean Buildings Act will "remain in place," *id.*, *Wash.*

---

[10]     A party may introduce evidence with a reply brief if it "had no opportunity to introduce this evidence earlier."  *Dotson v. District of Columbia*, No. 24-cv-1864, 2024 WL 5046282, at *2

*Gas Light Co.'s 15-Year Plan Submission* at 2, Washington Gas forecasts that "demand" and "customer counts" will "remain flat" for the next 15 years, "consistent with recent history," *id.*, *15-Year Plan: Formal Case 1167* at 3, 23. That contradicts Plaintiffs' representations that the Act "has caused and will continue to cause reduced growth of [Washington Gas's] customer base," Pls.' Statement of Material Facts [26-1] ¶ 12, and that the District will become a "no-go zone[ ]" for gas, Pls.' Opp'n at 7.

## IV. <u>Plaintiffs' Attacks on Other Parts of the Clean Buildings Act Are Unavailing.</u>

The District gave several reasons to reject Plaintiffs' attack on the 2017 version of Appendix Z. Def.'s Mot. at 41–43. Plaintiffs ignore a critical one: under *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam), Plaintiffs lack standing because it is speculative that the 2017 Appendix Z will apply. *See* Def.'s Mot. at 42–43. Plaintiffs thus concede that they lack standing, and the Court can reject the Appendix Z challenge on that ground alone.

Plaintiffs' other responses lack merit. First, Plaintiffs say they preserved a challenge to Appendix Z by challenging the Clean Buildings Act generally. Pls.' Opp'n at 31. But the Act does not necessarily incorporate the 2017 Appendix Z, so a general challenge to the Act could not preserve a challenge to specific parts of Appendix Z. *See Rothe Dev., Inc. v. DOD*, 836 F.3d 57, 63 (D.C. Cir. 2016) (plaintiff, on summary judgment, could not challenge a statute's implementing regulation when the complaint challenged the statute). Second, Plaintiffs say their generalized allegations of injury suffice to show standing to challenge specific parts of Appendix Z. Pls.' Opp'n at 32. But Plaintiffs overlook precedent holding that standing must be proven with regard to each part of a multipart statute. Def.'s Mot. at 42 (citing *Davis v. FEC*, 554 U.S. 574, 733–34 (2008)). Third, Plaintiffs repeat that Appendix Z "caps the amount of non-

---

(D.D.C. Dec. 9, 2024). Washington Gas's estimates were released after the District filed its Motion (but before Plaintiffs filed their Opposition). A full copy is available here.

renewable energy that a building can use," Pls.' Opp'n at 31, but they do not engage with the District's explanation of why such a cap does not equate to a "gas ban," Def.'s Mot. at 43.

## V. **<u>Plaintiffs Are Not Entitled to the Relief They Seek.</u>**

Plaintiffs continue to insist on the drastic relief of invalidating the Clean Buildings Act, but they fail to carry their burdens to show that severability or equity will tolerate such a result.[11]

On severability, Plaintiffs first squabble over what effect the District's severability statute has. Pls.' Opp'n at 29. But "[e]ven without a severability provision, there is always a 'presumption of severability whenever the remaining provisions, standing alone, are 'fully operative as a law.'" *Hooks v. United States*, 191 A.3d 1141, 1145 (D.C. 2018) (quoting *McClough v. United States*, 520 A.2d 285, 289 (D.C. 1987)). The rest of the Act can remain operative without the fossil fuel prohibition or challenged Appendix Z provisions because—as Plaintiffs concede—"a net-zero-energy standard can be implemented even with the use of fossil fuels." Pls.' Opp'n at 29–30; *see also id.* at 34.

Plaintiffs nonetheless argue that severing the fossil fuel prohibition would rewrite the definition of "net-zero-energy standard." *Id.* at 30. Plaintiffs confuse severance with a rewrite. A rewrite occurs when the court must add language to save a statute, "such as by reading in a missing element." *Valdez v. United States*, 320 A.3d 339, 383 (D.C. 2024). But "merely severing an unconstitutional provision and leaving the rest of the statute as it is" does not rewrite the statute. *Id.* (internal quotation marks and citation omitted). Here, the Court can strike the fossil fuel prohibition and leave the rest of the net-zero-energy standard as it is. *Id.*

---

[11] Plaintiffs' failures to show that their requested relief comports with equity defeats their requests for both declaratory and injunctive relief. *Hill v. DOI*, --- F.4th ----, ----, No. 24-5011, 2025 WL 2394169, at *8 (D.C. Cir. Aug. 19, 2025).

On equity, Plaintiffs do not meet the standard for *irreparable* harm. Def.'s Counter-Statement of Disputed Facts (Def.'s Resp.) [29–1] ¶¶ 5–16; Def.'s Mot. at 44–45. Plaintiffs respond by accusing the District of an "about-face" because the District previously declined to challenge Plaintiffs' standing. Pls.' Opp'n at 34 n.8. Standing and irreparable harm "are far from the same," and "irreparable harm is a higher bar to clear." *Santos v. Collins*, No. 24-cv-1759, 2025 WL 1823471, at *6 (D.D.C. Feb. 26, 2025). By declining to challenge Plaintiffs' standing, the District did not waive any challenge to Plaintiffs' assertions of irreparable harm.

Plaintiffs do not argue that they meet the standard for irreparable harm but instead rehash their allegations and say they are undisputed. Pls.' Opp'n at 34–35 n.8. That is untrue; the District disputed them; yet Plaintiffs fail to address those disputes. Def.'s Resp. ¶¶ 5–16. And Plaintiffs' assertions of harm are further undermined by Washington Gas's forecasts.

Last, Plaintiffs argue that an injunction would be appropriately "limited" if it "enjoin[ed] the officials who enforce" the Act. Pls.' Opp'n at 33. As precedent neglected by Plaintiffs explains, an injunction is appropriately limited if it enjoins officials from enforcing only the *parts* of a policy that a plaintiff has shown are unlawful and causing irreparable harm. Def.'s Mot. at 44–45. Here, that means the fossil fuel prohibition and a few provisions of 2017 Appendix Z (assuming Plaintiffs meet all factors for injunctive relief). So Plaintiffs' requested relief is overbroad because it seeks to enjoin officials from enforcing the rest of the Act, too. And that relief is also overbroad because the Court can only enjoin enforcement of the Act against Plaintiffs—not anyone else. *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2548 (2025).

## CONCLUSION

The Court should grant summary judgment in favor of the District and deny summary judgment to Plaintiffs.

Date: September 10, 2025.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Adam J. Tuetken*
ADAM J. TUETKEN [242215]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
(202) 735-7474
adam.tuetken@dc.gov

*Counsel for Defendant*